## JACKSON, ex dem. Lowell, *vs.* PARKHURST.

*Parol* evidence is not admissible to shew the land *intended* to be granted by a deed, where the premises are described as *being all the land purchased by the grantor of A. B.*, and where, without such description, the deed is incapable of location : the deed to the grantor in such case must be produced.

Where a *witness* is competent *in chief* he must be sworn *generally* in the cause, although his examination may be confined to only a particular or incidental fact, and although the evidence may be addressed to the court instead of the jury ; it is not allowable that he be *specially* sworn to answer such questions as shall be put to him in relation to any particular matter. It is otherwise where a *party to the record* is sworn to prove the loss or destruction of a paper.

An equitable lien or mortgage cannot be set up at law as a legal estate to defeat a recovery in an action of ejectment.

THIS was an action of ejectment brought for the recovery of about *one acre* of land, tried at the Livingston circuit in October, 1828, before the Hon. JOHN BIRDSALL, than one of the circuit judges.

The plaintiff shewed title to the premises in question under a sheriff's sale by virtue of an execution against one *Ezekial Fox*, who was in possession of the premises for 12 or 13 years previous and up to the spring of 1827, claiming to be the owner.

NEW-YORK,
May, 1830.

Jackson
v.
Parkhurst

On the part of the defendant, it was shewn that Fox claimed title to the premises under one James Sterling.  A deed from Samuel Selden to Jacob Egberts, bearing date 26th September, 1807, was produced, the execution thereof by the grantor proved, and the deed offered to be read in evidence ; which was objected to, on account of the vagueness and uncertainty of the description of the premises, they being thus described : " All that certain tract or parcel of land situate in the town of Charlestown, county of Ontario and state of New-York, to contain all the land lying on the north side of the state highway that I purchased of Richard McCardy, supposed to contain about *one hundred acres* of land, be the same more or less, together with the house and barn." The defendant's counsel then offered to prove by the subscribing witness to the deed, for the purpose of locating the premises, that he knew the parties to and *the land* conveyed or intended to be conveyed by the deed; that he had ever since the date of the deed lived near the premises; that the grantee (Egberts) took actual possession of the land intended to be conveyed, and that he and his assigns have continued in the possession thereof ever since ; and that the land includes the premises in question.  The plaintiff also objected to this testimony, contending that the description of the premises in the deed proved could be rendered definite and certain only by the production of the deed from Richard McCardy to Selden, the grantor.  The judge rejected both the deed and the testimony offered in explanation of it.  The defendant then proved the execution of a deed from Jacob Egberts to I. Riggs, jun. bearing date 1st April, 1808, containing the same description of the premises conveyed as in the deed from Selden to Egberts, and offered the same species of evidence in explanation as he did in reference to the former deed ; which deed and evidence were also rejected.

The defendant then proved that Egberts took possession of *the* 100 acres which include the premises in question ; that Riggs succeeded Egberts, and James Sterling succeeded Riggs in the possession of the lot ; that James Sterling was in possession of the 100 acres before the late war, and that not long before he took possession he let *Fox* have a small parcel

thereof, which is the lot in controversy, who went into posses- <span style="float:right">NEW-YORK,</span>
sion and built a house thereon.   He also proved that in June, <span style="float:right">·May. 1830.</span>
1817 or 1818, on application being made by a witness to <span style="float:right">Jackson</span>
Fox to purchase the property in his possession, Fox asked as <span style="float:right">v.</span>
the price thereof $600 or $700, and that on being enquired <span style="float:right">Parkhurst.</span>
of whether there were any incumbrances on it, he said he
could not give any title thereto ; that the witness must go to
James Sterling, and any bargain he could make with him, he
(Fox) would ratify : the same witness, however, stated that
not long afterwards Fox claimed title to the premises.   Next
·was introduced a deed from James Sterling to James Justin
Sterling, his son, of the premises in question, bearing date 4th
·June, 1821 ; and it was admitted that the defendant was in
possession under his title.   The defendant rested.

   The plaintiff proved by Matthew Warner that in 1813 or
1814, James Sterling and wife executed a warranty deed of
the premises in question to Fox, and duly acknowledged it
before him, he being authorised to take the acknowledgment
of deeds ; that he drew the deed, and after endorsing the cer-
tificate of acknowledgment, told Fox his deed was complete,
and laid it on the table before him.   Fox paid him his fees for
taking the acknowledgment, and he left him.   Whether Ster-
ling was in the room when he laid the deed on the table he could
not state, nor did he know whether there was ever a formal de-
livery of the deed ; but some months afterwards he heard Ster-
ling at an election say that Fox was a freeholder and had a deed
of his land though he did not specify of what land.   This wit-
ness further testified that at the execution of the deed a note
was given by Fox to Sterling for the consideration money ex-
pressed in the deed, viz. $20.   The defendant was then re-
quired to produce a certain receipt given by Sterling to Fox,
in pursuance of notice given.   He refused to do so ; where-
upon the plaintiff proved that the receipt in question was in
the possession of the attorney of Fox on the trial of a cause
between him and Sterling in 1824, and that the same attor-
ney was now the attorney of the defendant, who, being in
court, was called upon to testify that the receipt was in his
possession in court.   It was objected that the attorney could
not be compelled to testify, but the objection was overruled,

and he testified that the receipt was then in court in his possession as the attorney and counsel of the defendant. He was required by the plaintiff to produce it, which he refused to do. The judge directed him to elect either to produce the receipt or have parol evidence given of its contents. The attorney replied that it was indifferent to him which course was pursued, and that the judge might make such direction as he thought proper, The judge directed him to produce the receipt; it was produced and proved. It was under seal, and bore date 28th January, 1819, and by it James Sterling acknowledged to have received of Ezekiel Fox a deed executed by himself to Fox in 1813, of one acre of land, in deposit and for the security of $309, specified in two notes of hand given by Fox to Sterling, one for $250, dated in May, 1818, and the other for $59, dated 23d January, 1819, both payable on demand; and binding himself, on the payment of the notes, to deliver the deed to Fox or his heirs. The plaintiff then proposed that James Sterling should be sworn, not in chief but specially, to prove the loss of the deed received by him from Fox; this was objected to, but the objection was overruled, and he was sworn to answer such questions as should be put relative to the loss of the deed, and he testified that the deed had been in his possession, and that he did not know whether it was lost or destroyed, or what had become of it.

The defendant then called James Sterling as a witness on his part, who, after being released by his son from the effect of the covenant of warranty contained in his deed to him, was sworn and testified, that the deed to Fox was *never delivered to Fox*; that after it was executed and acknowledged by him and his wife the officer took it to draw the certificate of acknowledgment, and on his returning it to them, told them that they could do the rest of the business themselves; that a few days afterwards Fox declined having the deed, and he the witness, leased the premises to him and received rent for the same. As to the instrument or receipt of 28th January, 1819, he said he had no recollection of having signed it, although the signature looked like his, the body of the instrument was in Fox's hand writing; he had never read it

or executed it for any such purpose as was expressed in it. He stated that in June, 1821, when the deed from him to his son was executed, Fox was in possession of the premises in question, claiming title thereto ; and he also testified as to the inducements and considerations moving to that conveyance which are not deemed necessary to be stated. The testimony of this witness was impeached.

The judge charged the jury that the plaintiff was entitled to recover ; that the evidence was sufficient to prove a delivery of the deed to Fox ; that notice of such deed to James Justin Sterling might well be presumed from the facts in the case ; and that if they should find that the deed to J. J. Sterling was fraudulent or without consideration, or that at the date of it Fox was in possession of the premises claiming adversely, the deed was void as against the plaintiff. The jury found for the plaintiff. A motion was made for a new trial.

*J. Dickson,* for defendant.

*C. P. Kirkland,* for plaintiff.

*By the Court,* SUTHERLAND, J. Both parties deriving their title through *James Sterling,* it would seem to be immaterial to the decision of this cause, whether the deeds from Samuel Selden to Jacob Egberts, and from Egberts to Riggs, which were offered in evidence by the defendant, were properly excluded by the judge or not. When those deeds were offered in evidence, the plaintiff had showed nothing but a title by possession for 12 or 13 years in Ezekiel Fox. The defendant then proved that Fox, when in possession, claimed title to the premises under James Sterling, and offered the deeds in question in evidence, as the commencement of a paper title to be regularly carried down to James Sterling, and from him to James Justin Sterling, under whom the defendant is admitted to have entered. The effect of this evidence would have been to compel the plaintiff to shew a paper title from James Sterling older than that of James Justin Sterling, or to defeat it in some other way, or he could not have recovered. The same effect was produced by the parol testimony which was actually given.

A possession prior to that of Fox was shewn in Egberts and Riggs, the grantees in the rejected deeds, and also in James Sterling, and then a deed from the latter to his son in 1821. This imposed upon the plaintiff the necessity of shewing a conveyance from James Sterling to Fox prior to 1821, which he contends was effectually done by the testimony of Matthew Warner. Admitting the deeds therefore to have been improperly excluded, it would not be a ground for granting a new trial, as the error has produced no injury to the defendant.

But I am inclined to think the evidence offered was properly rejected. The description of the premises in the deed it will be recollected, was, "all that certain tract or parcel of land situate in the town of Charlestown, in the county of Ontario and state of New-York, to contain all the land lying on the north side of the state highway, that I purchased of Richard McCardy, supposed to contain about 100 acres." It is obvious that the deed would have been incapable of location, and for that reason absolutely void, if the words "*that I purchased from Richard McCardy*" had been omitted. That was the significant expression which was designed by the parties to designate the premises intended to be conveyed. The defendant, therefore, should have been prepared to produce the deed from McCardy to Selden, or if it could not be produced, to prove its contents so far as was necessary to shew the premises conveyed by it. It became by the reference to it, part of the deed in question; and the evidence which was offered, was a substitution of the opinion or conjecture of a witness, in relation to the premises intended to be conveyed, when the conveyance itself had referred to another instrument, which we are bound to suppose would, if produced, have removed all doubt and ambiguity. Parol evidence is often not only admissible, but absolutely necessary in order to locate the premises described in a deed. That the boundaries, the courses and distances, or other description given in a deed, are applicable to particular premises, can be shown only by parol. But that was not what the defendant offered to prove. It was, that the witness knew the parties to and the land intended to

be conveyed by said deeds; and that they include the premises in question. It was not offered to be shewn that the witness knew that the premises in question were a part of the 100 acres which Selden had purchased of Richard McCardy, or that he had any knowledge whatever of the land covered by that conveyance.

The evidence was properly rejected.

2. The defendant's counsel was not compelled by the presiding judge to produce the receipt from Sterling to Fox; but the receipt having been shewn to be in his possession, and due notice having been given to him to produce it, he was told that he must produce it or parol evidence of its contents would be given. Upon this intimation he said it was immaterial to him which course was pursued; and the judge directed the receipt to be produced. The counsel must be considered as having voluntarily produced the receipt in preference to having its contents proved by parol. That the plaintiff had a right to prove the contents of the receipt there can be no question. (14 Johns. R. 338, and cases there cited.)

3. The judge undoubtedly erred in permitting James Sterling to be specially sworn to answer such questions as should be put to him in relation to the loss or destruction of the deed to Fox. Sterling was a competent witness for the plaintiff; and when the witness is competent in chief, he must be sworn generally in the cause, though his examination may be confined to a particular or incidental fact; and although the evidence may be addressed to the court instead of the jury; when the loss or destruction of an instrument is proved by a *party to the record*, he is sworn specially, because he is an *incompetent witness, and is admitted only from the necessity of the case, and shall be a witness no farther than such necessity demands.* But, although the judge erred in this respect, I am induced to think a new trial ought not on that account to be granted; because the witness was immediately afterwards called and sworn in chief on the behalf of the defendant. The defendant therefore had the benefit of his testimony in as ample a manner as though he had been the witness of the plaintiff. The only injury he sustained was in

being compelled to procure a release to the witness from his son James Justin Sterling, in order to render him competent, and in losing the privilege of impeaching him. I think, under all the circumstances of the case, we are authorized in saying that the defendant was not prejudiced by the erroneous decision of the judge.

4. The remaining question, and that on which in my opinion the decision of the cause depends, is, whether the execution and delivery of the deed from James Sterling to Fox was duly proved. It will be recollected that this deed bore date in 1813, and the deed from the same grantor to his son James Justin Sterling, under whom the defendant claims, was not given until 1821. If the first deed was valid and effectual, the lessor of the plaintiff who claims under Fox must recover. The testimony of Matthew Warner, taken in connection with the receipt from Sterling to Fox of the 28th January, 1819, clearly establishes the execution and delivery of the deed. Warner says that after the deed had been duly executed and acknowledged by the grantors before the witness, he told Fox his deed was complete, and laid it on the table before him, and Fox paid him his fees. If, instead of laying the deed on the table, he had put it in the hand of Fox, there could be no question that it would have been a good delivery; or if he or any other witness had subsequently seen it in Fox's possession. Now Sterling's receipt shews that the deed was in the possession of Fox in 1819, when it was deposited with Sterling as security for his demand against Fox. The evidence of the delivery of the deed appears to me to be clear and irresistible. If the deed was actually delivered, the legal estate in the premises vested in the grantee, and the subsequent pledge or deposit of the deed with the grantor by way of security, would only give him an equitable *lien* on the premises in the nature of a mortgage. But such lien or equitable mortgage cannot be set up at law as a legal estate. (1 Johns. Cas. 114. 12 Johns. R. 418.) It would also appear, from the testimony of Sterling himself, that the demands for the security of which this deed was deposited, had been satisfied by way of set off

against a judgment recovered by Fox against him. If so, there was not even an equitable outstanding title in Sterling.

Some of the observations of the judge in his charge to the jury, I apprehend, were not strictly correct ; but they were not calculated to mislead or affect the decision of the jury. I am, on the whole case, of opinion that the motion for new trial ought to be denied.