Ranney, J.,
delivered the opinion of the court.
This bill is prosecuted to enforce the specific execution of an agreement made by the defendant, Noggle, with the complainants, by which he undertook to execute and deliver to the complainant, Joseph Bloom, a mortgage upon certain real estate in *Darke county, to secure the payment of certain debts then due and owing by him to them. As a part of the same agreement, upon the execution and delivery of this mortgage, Bloom bound himself to sign as surety with Noggle, or if the latter refused, to execute his own notes to the other complainants for the amount of their claims respectively, and to hold the mortgaged property for his indemnity.
In the decision of the case we make no question that this' agreement was fully perfected and entered into without fraud or oppression ; and that the title afterward conveyed to the assignees for the benefit of all Noggle’s creditors, was received by them with full notice of its existence.
On the other hand, it can not be doubted that Noggle, at the time he made the agreement, was in a state of absolute insolvency, nor that it was made with a view of preferring the complainants to his other creditors. The questions arising are: can the legal title to the property be taken from the general assignees, by decreeing a specific execution of this agreement ? and if a court of equity has this power, can it secure to the complainants the paramount lien they claim ?
If the case could be decided upon general principles, the right of the complainants to the relief they seek would seem to us as clear as it now seems clear that it can not be given consistently with statutory provisions bearing upon the questions stated.
Upon general equity principles, unaffected by statutory provisions, an agreement in writing for a mortgage, is a valid contract, fixing a specific lien upon the property agreed to be mortgaged, and will be specifically enforced by a court of chancery, against the party and all subsequent purchasers from him with notice, as well as against any general assignment, either voluntary or by operation of law, for the benefit of his creditors. These principles may be regarded as well settled, and the jurisdiction of courts of equity in such cases has been exercised, without question, from a very early period, as is abundantly shown by *the cases cited in argument. It rests upon the same foundation and has all the reasons for its sup *53 port, that exist in favor of a like interference upon contracts for.. the execution and delivery of absolute deeds.
As between the parties to such a contract, the agreement is valid and effectual’ in this, state, and we see no reason to doubt that a specific performance may be enforced by our courts of chancery, in the same manner and to the same extent, that such relief has been given in England, and other states of the Union.
But while these principles and remedies have their full application and effect, as between the parties to such a contract, we are clear in the opinion that no effect whatever can be given to it consistently with section 7 of the act of .June 1, 1831 (Swan’s Rev. Stat. 310), to provide for the proof, acknowledgment, and recording deeds, etc., as against third persons who have subsequently acquired the legal title to, or a lien at law upon, the property to which it relates.
By the positive provisions of that section, as construed by the declatory act ¡of March 16,1838 (Swan’s Rev. Stat. 311), and repeated decisions of this court, as against such third persons, mortgages have no effect either at law or in equity until delivered to the recorder of the proper county for record.
By the first-named section it is provided that mortgages “ shall take effect from the time- when the same are recordedand by the last, after reciting that doubts had arisen whether “ deeds of mortgage take effect from the time the same are delivered to the recorder of the proper county for record, or from the time the same are actually copied into the book of records,” it is declared “ that mortgage deeds do and shall take effect and have preference from the time the same are delivered to the recorder of the proper county, to be by him entered on record.”
In the numerous cases that have arisen since the passage of these statutes, almost every variety of unrecorded instrument, operating by way of mortgage upon real estate, has been passed *upon ; but in no single instance have the subsequently acquired legal rights of third persons been displaced by such instruments, whether such rights existed by deed, mortgage, judgment lien, or levy upon the property.
In Stansell v. Roberts, 13 Ohio, 148, the question arose between a prior unrecorded and subsequent recorded mortgage, the second mortgagee having notice of the first mortgage, and the lien of the latter was preferred. It is admitted that a different result would *54 have ensued upon g-eneral chancery principles, by the application of the doctrine of earlier equities; but the court considered the case settled by the statute, and as the legislature had declared the effect of notice in the section relating to absolute deeds, and had omitted any such declaration in that relating to mortgages, they thought “the expression of the consequences of notice in one class of deeds, and the omission of it as to the other, a plain indication that the legislature did not mean to give the protection arising from it, except to the class of deeds to which it is expressly attached.”
In each of the cases of Mayhan v. Coombs, 14 Ohio, 428; Jackson v. Luce, Ib. 514; White v. Denman, 16 Ohio, 59; S. C., in review, 1 Ohio St. 110, and Holliday v. The Franklin Bank of Columbus, 16 Ohio, 533, the contest arose between an unrecorded mortgage, or one defectively executed, so as not to be entitled to record, and a subsequent judgment lien; and in each of them the lien of the judgment was preferred. While in the case of Fosdick v. Barr, 3 Ohio St. 471, the same preference .was given to a levy upon execution issued upon a judgment rendered in another county, and having no lien upon the property.
Mo one of these cases was decided in ignorance of the general principles to which we have alluded, and in every one of them a different conclusipn would have been arrived at, if these principles could have furnished the rules of adjudication. But it was perfectly competent for the legislature to change or modify these *rules, and when it had. done so, no discretion was loft to the judicial tribunals to depart from the express commands of the legislative body. Those commands the courts have regarded as explicit; the statute expressly declaring, that mortgages do and shall take effect and have preference, “ from the time the same ar.e delivered to the recorder of the proper county, to be by him entered on record.” To give them any effect before, as against the persons intended to be protected by this statute, would be to repeal it. It was not made for the mortgagor, and therefore, as to him, the record of the mortgage was wholly unnecessary; but it was designed to protect third persons who might acquire legal interests in, or liens upon, the property. As to them, the record was made conclusive; and they are only bound to regard such mortgage, liens as the record discloses at the time their rights accrue. The principle deducible from all the cases is, that the legal rights of such persons can not *55 be displaced, at the instance of the holder of a prior unrecorded mortgage, or contract for a mortgage, although acquired with notice of such mortgage, or of the existence of such contract; the object of the law being to avoid all the vexed questions of notice, actual or constructive, in determining priorities of lien. So far as may be necessary to their protection, such a thing as an equitable mortgage is wholly unknown.
Until entered for record, they have no effect either at law or in equity against third persons; and until they take effect as legal instruments, they are entirely inoperative to prevent others from acquiring uncontrollable legal interests in the property. The lien they give is governed by the statute, and only attaches when the statute has been complied with. The record gives them vitality, and the record alone can be appealed to to determine when they have taken effect.
The doctrine of earlier equities only applies when the contesting interest is only an equity; but wh en that has been clothed with legal protection, it can not be displaced by anything short of a prior duly recorded instrument.
*1 am quite ready to admit, that the propriety of extending these doctrines, to the protection of subsequent judgment liens, might well have been doubted. Ordinarily such liens only attach to the interests of the debtor in the property; and hence it was urged with much force, that as these unrecorded mortgages and contracts were effectual against the party, they ought to be equally so against the judgment creditor, who took his place and succeeded to his rights. If this were an open question, the argument would be entitled to great weight; and I am not prepared to say that I should not consider it altogether sound. But the opposite course of decision has been too long and uniformly maintained, to be now disturbed, without involving consequences vastly more injurious than can arise from adhering to it.
A question of less doubt might also be made, whether a subsequent mortgagee or purchaser with notice, could take a conveyance of the legal title, without committing a fraud upon the holder of the prior equitable right. But this, too, has been long since settled, upon what was considered a fair construction of the statute. At first view, it seems inequitable to permit this to be done; but it is to be remembered that if notice is permitted to supply the place of the registry, the whole field of constructive notice immediately *56 plies; or if it is made to depend upon actual notice, tbe inquiry is still attended with all the danger and uncertainty incident to parol evidence, when used for the purpose of affecting written instruments, and disturbing titles.
A very limited experience will serve to satisfy any one, that there is no more fruitful source of litigation, and none in which the results are more uncertain and unsatisfactory.
It may, therefore, well be doubted, whether a sound public policy does not require the establishment of a clear and certain standard of decision, incapable of vibration, and free from the evils of litigation, uncertainty, and fraud, by making it all depend upon a simple matter of fact, of easy solution, and allowing every thing to be settled by the priority of the registry. Some of the *most eminent and experienced chancellors have been of this opinion; and the courts of this state have always supposed, that this was the policy intended to be established by the legislature. If they have been mistaken in this, the mistake is now too deeply rooted, to be remedied by the judicial tribunals. Nothing short of a more explicit declaration of the legislative will, and applicable alone to future cases, can remedy the evil, if such it is.
Whether, therefore, we consider the general assignees in this case as purchasers for a valuable consideration, or as holding the legal title in trust for the benefit of all the creditors, it is equally clear that it can not be taken from them by the complainants. A contract for a mortgage can not have greater effect than one defectively executed, or one perfectly executed, but not recorded.
It is unnecessary to consider the effect of depositing the title papers, or whether consistently with our recording acts, such a deposit is sufficient to satisfy the statute of frauds. At most it could operate only as an agreement for a mortgage, and at best could be no bettor than a written contract. 2 Story’s Eq., sections 1020,1021; Johnson v. Parkhurst, 4 Wend. 369.
There is another conclusive view of this case. If the mortgage had been executed according to the agreement, or should be now decreed, we are clear in the opinion that it would inure to the benefit of all the creditors of the mortgagor, under the provisions of the act of March 14, 1838, relating to assignments by insolvent debtors, and that the proceeds of the mortgaged property would be carried precisely where they are now left by the general assignment.
*57 It is very true that it has been fully settled by repeated decisions of this court, that a creditor of an insolvent debtor, or one having assumed liabilities for him as surety, may lawfully take from him a mortgage to secure such debt, or save harmless from such liability; and, as the reward of his diligence, will be protected in the priority thus obtained. Doremus v. O’Hara, 1 Ohio St. 45; Atkinson v. Tomlinson, lb. 237.
*But it is equally well Bettled, that if he attempts to extend the lien beyond the necessity of his own indemnity, and secure the debt of any other creditor, the mortgage is in substance and legal effect an assignment within the provisions of that act; and the mortgagee being a trustee for such other creditor, under the act becomes a trustee for all the creditors of the mortgagor. Our reasons for holding such a mortgage an assignment within the purview of the law, are stated in the case of Harkrader v. Crane, decided at the present term.
This would have been exactly the position of the mortgagee in this case. He not only attempted to secure himself, but several other creditors of the mortgagor; and while it is true that he agreed to become security for their debts, we have no difficulty in saying that this act can not be evaded by assuming a liability as surety for the insolvent debtor, as a part of the transaction by which the mortgage is taken, and a priority be thus secured.
In any view the bill must be dismissed, saving to the complainants such rights as they may have under the general assignment.