## HAMMOND a. BUSH.

*Supreme Court, Third District; Special Term, January,* 1859.

CONFESSION OF JUDGMENT.—AMENDMENT.—EQUITABLE LIEN.—
COSTS.

The court have no power to allow an amendment of an insufficient statement and confession of judgment, so as to render the judgment entered upon it valid, as against intervening *bona fide* purchasers or incumbrancers.

Whether the court has power in any case to compel one who has confessed judg-

ment upon an insufficient statement, to sign and verify an amended statement,— *Query ?*

A debtor owning real property agreed to secure his debt and new advances made to him, by a confession of judgment. In pursuance of the agreement the advances were made, and judgment to secure the whole debt was entered, but upon an insufficient statement.

*Held,* that the court would not relieve the creditor against the claims of subsequent *bona fide* purchasers and incumbrancers, although they had notice of the existence of the judgment when they became such.

A complaint stating only such facts, and seeking to have the judgment by confession amended, and the debt declared a lien prior to the intervening claimants, should be dismissed, with costs to all the defendants who resist the action.

Trial by the court of a creditor's action.

This was an action brought by the plaintiff as president of the Union Bank of Sullivan county, against Abial P., Luther, Obadiah H., and James F. Bush, Edwin Fobes, Rachel Hasbrouck, Ebenezer Bush, Severyn Hasbrouck, Gideon Wales, executor, and Sophronia Stewart, executrix of Levi Stewart, deceased, William Murray, president of the Goshen Bank, Sophronia Stewart, and the Middletown Bank, defendants upon the following facts :

During the year 1856 and a part of 1857, the defendants Abial P. Bush, Luther Bush, and Obadiah H. Bush were residents of Sullivan county, engaged in a tanning and mercantile business, as co-partners at Bushville, N. Y., under the firm, name, and style of A. P. Bush & Co. On the 9th day of May, 1856, the Union Bank loaned to A. P. Bush & Co., in cash, the sum of $2000, for which A. P. Bush & Co. gave their promissory note, due and payable three months after date, for the sum of $2000. On the 11th day of June, 1856, the Bank in like manner loaned to them in cash to the sum of $1000, and took their promissory note for the same, payable three months after date. And on the 6th day of August, 1856, the Bank in like manner loaned to them in cash the sum of $2000 ; and in like manner took their promissory note for the same, payable three months after date.

On the 13th day of February, 1857, the notes having become due and payable, the plaintiff, as president of the Bank, recovered judgments on the same in the Supreme Court of this State, in due form of law against the defendants, Abial P. Bush,

Obadiah H. Bush, and Luther Bush, composing the firm of " A. P. Bush & Co.," as follows : on the first of the notes they recovered judgment for the sum of $2071.19, with $9.96 costs ; on the second note, for the sum of $1029.79 and $9.96 costs ; and on the third note, for the sum of $2037.40 and $9.96 costs ; the judgments being for the amount of principal and interest due on the notes respectively.

The defendants Abial P., Luther, and Obadiah H. Bush, composing the firm of A. P. Bush & Co., were, during the whole of the year 1856, and a part of 1857, the owners in fee simple and in the possession of a large and valuable estate in the county of Sullivan, which real estate as owned in part by them jointly, and in part by some of them separately, consisted of twelve parcels, of the value of ten thousand dollars or over, and so described in the complaint.

The judgments by virtue of the entering and docketing of the same in the office of the clerk of the county of Sullivan, as above stated, became and were up to, and on the 27th day of July, 1857, valid and subsisting liens and incumbrances upon those lands and real estate of the defendants, composing the firm of A. P. Bush & Co. A portion of the judgments had been paid by those defendants during the spring and summer of the year 1857, leaving a balance due and owing thereon on the 27th day of July, 1857, of $3300, which the Bank was intending to take proceedings to collect.

On the 25th day of July, the same defendants Abial P., Luther, and Obadiah H. Bush called upon the plaintiff and officers of the Bank, and stated to them that they were carrying on a large tannery and mercantile business, but were much pressed for money and in embarrassed circumstances, and that if the Bank attempted to enforce the collection of the judgments they would be obliged to suspend, and break up their business, as they had no means of payment. They also represented to the Bank, and gave its officers a statement of their liabilities and assets, and assured them that if the Bank would give them a few months longer time, and loan them the sum of $2900 in addition to what they already had, that they would be enabled to meet all their liabilities, and go on with their business without interruption or failure ; and they also agreed with the Bank, that as the personal responsibility of others to secure the Bank

might be difficult or inconvenient to obtain, and as they wanted a permanent loan, they would give the Bank a lien by judgment or mortgage upon all their valuable real estate, which was entirely clear and unincumbered, for the proposed loan, together with the balance remaining unpaid on the judgments.

The Bank acceded to the proposition, and in pursuance of the agreement, satisfied and cancelled of record their several judgments, on which there was due and unpaid on the 6th day of July, 1857, the sum of $3300 ; and also loaned to them on the 27th day of July, in cash, the sum of $2900, making with the balance due on the judgments, $6200, and to secure the Bank therefor, and for the purpose of giving the Bank a lien upon their lands, the defendants Abial P., Luther, and Obadiah H. Bush confessed judgment to the plaintiff, as president for that sum, and $6.38 costs. The judgment was entered by a statement and confession of judgment, and was signed and sworn to by those defendants, and upon which statement and confession a judgment was duly entered and docketed against them in the Supreme Court, in the county of Sullivan, on the 27th day of July, 1857.

The statement and confession of judgment, were as follows :

[TITLE OF THE CAUSE.]

Statement and confession of judgment without action.

" We do hereby confess judgment in this cause in favor of the above-named plaintiff, Nathan S. Hammond, president of the Union Bank, for the sum of six thousand two hundred dollars, and authorize judgment to be entered therefor against us.

" This confession of judgment is for a debt justly due to the plaintiff, arising upon the following facts :

" For balance due upon three several judgments in the Supreme Court in favor of plaintiff against these defendants, which judgments were docketed —— 185–, and were obtained upon notes discounted at the Union Bank of Sullivan county for the defendants, and the avails paid to us. And also for money this day loaned by the Union Bank of Sullivan county to the defendants, for which, in addition to the above balance, this judgment is confessed."

Dated July 25, 1857.

Verification in the usual form.

Thereafter the firm of A. P. Bush & Co. became further embarrassed; other heavy judgments were obtained against them, under which all their personal property was levied upon and sold; and they finally became entirely insolvent. About the time of their failure, and on the 17th day of September, 1857, they conveyed their real estate (except the 10th and 12th parcels) to the defendant James F. Bush, who took the same with knowledge of the existence of the plaintiff's judgment by confession, but had been advised that it was invalid. The consideration named in the deed was $25,000, but the actual object and consideration, as between the parties to the deed, was as follows:

1st. The amount of the plaintiff's judgment was reckoned in the amount necessary to make up the nominal consideration, and the said James F. Bush agreed to take his risk of that judgment, but did not agree with his grantors to pay the same.

2d. To secure James F. Bush to the amount of several thousand dollars (supposed to be some three or four thousand dollars) for indorsements he had made and liabilities he had incurred for the said grantors.

3d. For the balance (being over $4000) he gave them his promissory notes, which he subsequently either paid or secured to other parties to whom they had transferred the same by conveyances of property. On the 8th day of October, 1857, James F. Bush and wife conveyed by warranty deed parcels Nos. 1 and 11 of the real estate to Edwin Fobes and Ebenezer Bush, for the alleged consideration of $2800, as expressed in the deed, which consideration was applied to take up notes to that amount, which James F. Bush had given as above stated to Messrs. A. P., L., and O. H. Bush, and which the latter had transferred, and which had then become the property of Edwin Fobes and Ebenezer Bush.

On the 17th day of December, 1857, James F. Bush conveyed to Edwin Fobes, by warranty deed, parcels Nos. 3, 4, 5, 7, 8, 9 of the real estate (being the residue of what had been conveyed to him by A. P., L., and O. H. Bush), for the alleged consideration as expressed in the deed of $25,000. The actual consideration was $18,000, and was paid and secured by one

note of Fobes to James F. Bush of $12,000, payable in fifteen months after date to James F. Bush, and not negotiable ; and by several notes of smaller amount, amounting in the aggregate to $6000. Fobes took this conveyance with knowledge of the existence of the plaintiff's judgment, but advised that it was invalid and without any agreement on his part to pay or discharge the same.

The premises embraced in the last deed were subsequently, and on the 17th day of May, 1858, mortgaged by Fobes to the Goshen Bank in two several mortgages, one of $5250 and one of $7100, to secure or take up Fobes' note of $12,000, which he had given to J. F. Bush, and which the latter, by an absolute assignment, had sold or transferred to the Goshen Bank. The Goshen Bank took these mortgages with knowledge of the existence of the plaintiff's judgment, but under similar advice to that above mentioned as to its invalidity, and without any agreement to pay or discharge the plaintiff's judgment, or to become in any way liable therefor.

The Goshen Bank also were owners of a judgment in the Supreme Court, obtained by them in February, 1858, against A. P., L., and O. H. Bush as drawers, and Daniel Gerow as indorser of a $1000 note discounted by them, and which judgment was docketed on the 26th day of February, 1858, in the clerk's office of Sullivan county for $1042 damages, and $23.54 costs.

On the 24th day of August, 1857, Rachel Hasbrouck recovered a judgment in the Supreme Court against Abial P., Luther, and Obadiah H. Bush for $3522.81 damages, and $15.25 costs— docketed in the clerk's office of Sullivan county on the 24th day of August, 1857.

On the 9th day of September, 1857, Rachel Hasbrouck recovered a judgment in the Supreme Court by confession against Obadiah H. Bush for $2337.39 damages, and $16.23 costs, docketed on that day in the clerk's office of Sullivan county.

On the 27th day of August, 1857, Luther Bush executed a mortgage (accompanied by a bond) to Rachel Hasbrouck, to secure $2479—probably the same debt embraced in the last-mentioned judgment—upon parcel No. 10 of the real estate. This parcel was owned by Luther Bush in severalty.

On the 24th day of September, 1857, Obadiah H. Bush con-

veyed by deed to Severyn Hasbrouck parcel No. 12 of the real estate owned by him in severalty, for the alleged consideration of $2000. The object and consideration of this conveyance were to secure or pay Severyn Hasbrouck for a $2000 note, which at the request of O. H. Bush he had indorsed for A. P. Bush & Co., and which was discounted at a Kingston bank, and subsequently paid and taken up by Hasbrouck. This note was delivered by Hasbrouck to O. H. Bush on receiving from him this mortgage.

On the 16th day of October, 1857, the Middletown Bank recovered a judgment in the Supreme Court (docketed in Sullivan county on the 20th day of October, 1857), against Abial P., Luther, Obadiah H. Bush, and Daniel Gerow, for $1525.47 damages and costs. This judgment was obtained on a note for $1500, dated June 19, 1857, payable 90 days from date, drawn by O. H. and L. Bush, payable to A. P. Bush & Co., and indorsed by them and Gerow, and discounted by said Bank.

On the 28th day of December, 1857, Edwin Fobes and wife executed to the Middletown Bank a mortgage (a bond accompanying the same) upon parcels Nos. 1, 2, and 11, formerly owned by Obadiah H. Bush in severalty, to secure the sum of $1500, being for the amount of a promissory note dated August 14, 1857, payable 90 days after date at the Middletown Bank, and discounted by them, drawn by Obadiah H. and Luther Bush, and payable to the order of A. P. Bush & Co., and indorsed by them and by Edwin Fobes, and recorded on the 3d day of March, 1858. At the time of the discount of this last-mentioned note this bank was not informed of the existence of the plaintiff's judgment, but were subsequently informed thereof and advised that the same was invalid.

On the 8th day of October, 1857, Luther Bush, who owned parcel No. 10 in severalty, executed a mortgage thereon (with a bond accompanying the same) to Sophronia Stewart, to secure the sum of $1031, loaned by her two or three years previously on his promissory note.

On the same day, he executed on the same premises a mortgage (with a bond accompanying the same) to Gideon Wales and Sophronia Stewart, executor and executrix of Levi Stewart, deceased, to secure $653.50, being for money loaned some years years previously by Levi Stewart to him.

These judgments were docketed, and the mortgages and deeds were recorded in Sullivan county, at or shortly after the time they were respectively given.

On the 27th day of March, 1858, the real estate was sold by the sheriff upon an execution issued on the plaintiff's judgment by confession, and struck off to the plaintiff as purchaser thereof, in parcels, at the following prices: Nos. 1 and 2 for $250; Nos. 5, 7, 8, 9, for $3000; No. 6 for $200; No. 10 for $1400; No. 11 for $1000; No. 12 for $582. The sheriff of Sullivan county executed to the Union Bank of Sullivan county a certificate of the sale in accordance therewith.

Lots Nos. 1, 2, 5, 7, 8, 9, 6, 10, 11 of the same real estate were also sold under Rachel Hasbrouck's judgment, and bid off by her at the aggregate sum of $3100, but it did not appear by the evidence at what time that sale took place.

At the time of the entry of the plaintiff's judgment, Obadiah H. Bush owned parcels Nos. 11 and 12 in severalty of the twelve parcels of land described in the complaint, and also, it would seem, Nos. 1 and 2, although the two latter are embraced in the conveyance from the three Messrs. Bush, comprising the firm of A. P. Bush & Co., to James F. Bush. Luther Bush owned parcel No. 10 in severalty, and Abial P. Bush, and Luther Bush, and Obadiah H. Bush owned jointly parcels Nos. 3, 4, 5, 6, 7, 8, 9.

The defendants A. P., L., and O. H. Bush were presented, before suit was brought, with an amended statement and confession of judgment, and requested to sign the same. Obadiah H. Bush did so; the others refused.

On motion of the Goshen Bank, a judgment creditor of A. P. Bush & Co., the judgment, execution, and sale were set aside for insufficiency of the statement.

The plaintiff brought the present action to have the confession amended. He set forth in his complaint the foregoing facts, and alleged that his judgment of $6200, entered upon the statement and confession, and his sale under the same were irregular and defective by reason of an omission and mistake in not setting forth the facts out of which the indebtedness arose, and that his title, by reason thereof, will be irregular and defective— that the defendants, or some of them dispute the authority and validity of the judgment, the right and title claimed under

the judgment and sale, and refuse to acknowledge the plaintiff's right to the lands sold under the judgment, or to give or surrender possession thereof; and assume and exercise the right of cutting and taking away the bark and timber being and growing thereon.

The plaintiff claimed that by virtue of the foregoing facts he had acquired, and now had an equitable lien and charge upon the lands to the amount of his judgment, and that the same should be charged with the payment thereof.

And as relief he demanded that his said judgment may be reformed and amended, his sale confirmed as legal and valid, his equitable lien enforced, and the real estate charged with the payment thereof from the day of the date of the judgment, and such further or other relief as may be proper.

The defendants Abial P. Bush, Luther Bush, and Obadiah H. Bush were duly served with the summons and complaint in the action and suffered default. The other defendants all appeared and answered, objecting to the plaintiff's claim for relief, and setting up respectively the title or interest they had acquired under the several judgments, mortgages, and conveyances and sales before mentioned, and insisting that the plaintiff's judgment was void.

*H. R. Low*, for plaintiff.

*A. J. Bush*, for the defendants, James F. Bush, Edwin Fobes, Ebenezer Bush, Sophronia Stewart, Gideon Wales, and Sophronia Stewart, executor and executrix of Levi Stewart, deceased.

*J. A. Thompson*, for the defendant, Rachel Hasbrouck.

*M. Schoonmaker*, for the defendant, Severyn Hasbrouck.

*M. Sharp*, for the defendant, William Murray, president of the Goshen Bank.

*J. G. Wilkin*, for the defendant, the Middletown Bank.

HOGEBOON, J.—The relief substantially which the plaintiff asks, is that his judgment may be reinstated and take effect from the time it was originally entered, and he seeks to accomplish

Hammond a. Bush.

this in one of two ways. Either, first, by amending and reform-ing the judgment *nunc pro tunc* so as to supply the alleged de-fects in the statement and confession of judgment; or, second, by enforcing his claim as an equitable lien upon the lands in question, dating from the entry of the judgment.

The plaintiff concedes that the judgment is irregular and de-fective. I think it is more—and that as against subsequent judgment or mortgage creditors, or subsequent purchasers, it is void. Within sections 382, 383 of the Code, as interpreted by the decisions of this court and of the Court of Appeals, there seems to me to be no alternative but to pronounce the statement insufficient and the judgment invalid. It gives neither the dates, amounts, nor time of docketing of any of the three judg-ments which entered into the consideration of the judgment in question—nor the balance due upon them, or any of them. Nor if it were necessary to show the consideration of those judg-ments, does it give any specific or valuable data to determine or throw light upon that question. It says, it is true, they were obtained upon notes discounted *at* the Union Bank of Sullivan county for the defendants, and that they had the avails thereof. But it does not give the dates, amounts, time of payment, or other particulars in regard to said notes, nor the names of any of the parties thereto, nor does it state in express terms that the Union Bank discounted the paper or loaned the amount thereof. Nor does it show the amount advanced or loaned by the Bank to the defendants at the time of the statement. The informa-tion thus conveyed is therefore seen to be of a loose and indefi-nite character, wholly failing upon its face to establish a *prima facie* indebtedness on the part of the defendants to the Bank for the amount of the judgment, or to supply any sufficient or re-liable materials to aid other parties who might be interested in ascertaining the foundation, nature, and amount of such indebt-edness in prosecuting their investigations. I do not propose to review the authorities, I must take the law as settled by previous adjudications, and these seem to me decisive against the validity of the judgment. (Dunham *a.* Waterman, 17 *N. Y.* (3 *E. P. Smith's*) *R.*, 9; S. C., 6 *Abbotts' Pr. R.*, 366; Chappel *a.* Chap-pel, 2 *Kern.*, 215; Von Beck *a.* Shuman, 13 *How. Pr. R.*, 472; Purdy *a.* Upton, 10 *Ib.*, 494; Kendall *a.* Hodkins, 7 *Abbotts' Pr. R.*, 312; Boyden *a.* Johnson, 11 *How. Pr. R.*, 506.)

If then these radical defects exist, are they susceptible of reformation or amendment? The judgment in question is a statutory judgment—depending for its authority and validity upon a substantial compliance with the requirements of the Code. These requirements are, among others, that the debtors shall sign the written statement and verify it by their oaths— and this would seem to be indispensable to the validity of the judgment. Can this court substitute any thing else in its place? If not, how is it possible without the consent and co-operation of the defendants to create a valid judgment anew, and especially to antedate it, and give it effect as of the time of the original entry. The defendants have not signed any new or sufficient statement, and especially they have not verified it by their oaths. Can the court compel them to swear to it, and is it of any validity without the oath? (See Von Beck a. Shuman, 13 *How. Pr. R.*, 472.)

There are cases where the court interpose to correct mistakes and amend judgments—but these are generally, if not universally, where all the substantial elements of the judgment are already present, and there is some solid foundation upon which the amendment can operate—and usually such as arise from some inadvertence or clerical mistake, in which the parties themselves have not been at fault. (Seaman a. Drake, 1 *Cai.*, 8; Close a. Gillespie, 3 *Johns.*, 524; Baker a. Lewis, *Common Pleas*, 10 *Wend.*, 545.) I have therefore great doubt whether even against the judgment debtors themselves, any substantial reformation of these proceedings ought to be made, as to give the judgment a retroactive effect.

But the case is entirely different where the rights of subsequent purchasers or subsequent creditors by judgment or mortgage are to be affected. They are regular in their proceedings— they have obtained valid judgments or other incumbrances— they had a right to do so—they had valid debts, and if they have obtained a better lien by their superior vigilance or superior accuracy, they are entitled to retain it. The statute gives it to them (2 *Rev. Stats.*, 359, § 4; *Code*, § 282), and I think it is not in the power of this court, either as a law or an equity tribunal, to deprive them of it. (Buchan a. Sumner, 2 *B. C. R.*, 191.) I do not see that *knowledge* of the plaintiff's judgment makes such a difference as will defeat the preference thus acquired.

No person who succeeds in obtaining priority of lien, loses it because he may happen to know that another creditor has an older or a more sacred debt, or commenced his proceedings at an earlier date. It is a race of vigilance, and the law gives the prize to him who obtains the earliest valid lien.

Nor does it seem to me that the vigilant creditor loses his lien because his judgment is recovered for an antecedent debt. In one sense all judgments are recovered for antecedent debts. No judgment can be recovered until the debt exists. There seems, indeed, to be a stronger equity in favor of that person who advances his money at the time, and who is supposed to rely upon the present ability of the debtor to pay, and his possession of an estate free from incumbrances.

Nevertheless, the statute makes no such distinction. The judgment creditor must, it is true, be a *bona fide* creditor. But I do not think, in this connection, it means a creditor for value paid or advanced at the time of taking the judgment, or of commencing the suit on which judgment is obtained. A judgment obtained for an honest debt, and in a fair and regular way, is a *bona fide* judgment. We are not, on this point, without authority. In Lewis Common Pleas *a.* The People (15 *Wend.*, 110, affirming Butler *a.* Lewis Common Pleas, 10 *Ib.*, 541), it was held that if a judgment be signed by an officer without authority—as by a judge of the Common Pleas, not being a counsellor of the Supreme Court, where the sum intended to be secured exceeds $500—the roll was a *nullity*, and that its filing conferred *no lien*, and that upon its being properly signed afterwards, it could not be filed *nunc pro tunc* so as to confer a lien as of the time of the first filing. (See also Lawless *a.* Hackitt, 16 *Johns.*, 149 ; Johnson *a.* Fellerman, 13 *How.*, 21.)

In Little *a.* Harvey (9 *Wend.*, 157), the question arose as to the construction of the statute which terminates the lien of a judgment at the end of ten years from its docketing as against subsequent mortgages, judgments, or other incumbrances, and the court held that all purchasers are to be regarded as purchasers in good faith, except those who purchase with an actual fraudulent intent.

In Tufts *a.* Tufts (18 *Wend.*, 621), *knowledge* of the previous judgment was held no bar to the application of this rule. In Rettie *a.* Shepard (5 *Page*, 493), it was held that mere notice

of the existence of a judgment more than ten years old, and that it was unpaid, would not render a purchaser of land *mala fide.*

It was argued that there were in fact no judgment creditors of the Messrs. Bush in regard to this land, except Rachel Hasbrouck, inasmuch as to all except her, the land was conveyed by the judgment debtors before the other judgments were recovered, and that as to her she consented on the argument to the proposed reformation of the judgment. But their judgments are still unsatisfied, and they have a right to be kept in a situation to litigate the subsequent conveyances, and some of them as to their deeds or incumbrances derive title through the grantees in those subsequent conveyances. Severyn Hasbrouck has a conveyance of the 24th September, 1857, of a parcel (No. 12) not then conveyed to any person, and of course he has an interest in opposition to the plaintiff's judgment. The Goshen Bank, in addition to their judgment, have two mortgages given by parties who derived title from the judgment debtors, and of course that bank has an interest in protecting that title against the plaintiff's judgment. The Middletown Bank, in addition to its judgment, has a mortgage of premises, part of which was, and a part was not conveyed away by the judgment debtors at the time of the giving of the mortgage, and in either aspect their interest in this question is apparent. Equally apparent is the interest of the Stewarts, who claim under mortgages of parcels of the premises not conveyed away by the judgment debtors. Fobes, James F. Bush, and Ebenezer Bush are either still in possession of portions of the premises on which the plaintiff's judgment would, if valid, be a lien, or else they are interested as warrantors of the title, or as having given incumbrances (accompanied by bond), which it is important for them to protect. Thus it will be seen that as to all these parties the plaintiff's judgment cannot be resuscitated by judicial action and restored to its original position without directly conflicting with their rights.

My conclusion upon this branch of the case is, that except as to parties who consent, and as to the original judgment debtors, who have suffered a default, the plaintiff is not entitled to the reformation or amendment of the judgment.

There seem also to be decisive objections to aiding the plain-

tiff in the way demanded, by enforcing an equitable lien upon those lands as of the date of the judgment.

1. If the plaintiff is entitled to such relief in this case, I do not see why it must not equally be granted in all other cases where the judgment is radically unsound for an insufficient statement. In all cases, of course, the defendant intends to give a judgment, and to give a valid judgment, and to make and verify a sufficient statement to accomplish that result. In all cases the judgment is preceded by an actual agreement as to the items which shall enter into it, and that a proceeding shall be taken which shall give to the creditor a lien. Here are most of the elements of an equitable lien; and as between the parties themselves, independent of the objection that the statute rigidly requires a compliance with certain prerequisites in order to create a lien at all, I see no insuperable objection to judicially declaring and enforcing such a lien. But, as before stated, if it can be done in this case, it can be done in all others, and the consequence will be that however faulty may be the statement, the creditor can obtain, under the name of an *equitable lien*, the precise relief which he has failed to obtain under his *judgment by confession*, and thus the statute will be practically nullified. Before we reach this conclusion, we ought to be satisfied that we are inevitably drawn to it by well-recognized principles of equity jurisprudence.

2. There is no allegation in the complaint, and no evidence in the case, that the parties to the judgment in question intended to incorporate in the statement and confession of judgment any of the facts, for want of which the judgment is pronounced invalid; and there may be some question whether, without such allegation and proof, an equitable lien arises—in other words, whether the existence of the facts essential to constitute a valid lien, and the intent to make a judgment by confession, followed by a defective statement or confession, constitute an equitable lien, without, at least, an averment that the parties designed to embody these facts in the statement for the judgment. Can this court enforce that as an equitable lien, and give it the effect of a legal lien, which the parties never did put in the shape of a legal lien, and never yet, all of them, at least, have agreed to do, and have never been applied to do—that is, make up an amended statement, and verify it by their oaths?

The court cannot compel the oath, and the parties have not agreed to make it. The absence of these facts would, I think, be fatal to the amendment of the record; and I am not sure but they are destructive to the existence of an equitable lien.

3. At all events, it seems to me inequitable to enforce such lien to the prejudice of the rights of intervening incumbrancers and purchasers, who have regular judgments and fair titles perfected in the usual way ; and I think the same considerations apply as to them, to defeat this equitable lien as to prevent the restoration of the judgment; that is, that they are in the eye of the law *bona fide* purchasers or incumbrancers, standing before the court as compared with the plaintiff—equal in point of equity, and superior in point of legal priority.

4. As before stated, in reference to the reformation of the judgment, their knowledge of an imperfect judgment cannot defeat a legal priority. The right of the plaintiff to this real estate depends upon his having a valid statutory judgment, and not upon the loan or advance of the money. It is not like the case of a party who has notice of a prior loan secured by an unrecorded mortgage, and who procures his own mortgage to be first entered of record. There the first mortgage is complete, the loan is made, the instrument is executed, and nothing is needed to its consummation as a perfect lien, except to have it recorded.

The object of the record is to give *notice*—constructive notice—of these facts, to parties who subsequently deal with the debtor. In the case supposed the junior creditor has this notice—not record or constructive notice—but *actual* notice. The object of the record has, therefore, been accomplished, and it is well said the party is not legally prejudiced. (Jackson *a.* Burgett, 10 *Johns.*, 461 ; Jackson *a.* Dubois, 4 *Ib.*, 216.)

So also it has been adjudged, that an agreement for a loan of money, accompanied with a deposit of the title papers, and an advance of the money, is in equity a mortgage. It has all the elements of a mortgage—the agreement for the loan—the advance of the money—the deposit of the title papers, and through them the mortgage of the lands themselves, by the deposit or pledge of the symbols, or evidences of title of the property. Hence the mortgage is substantially perfect, and parties who deal with the debtor with knowledge of these facts, deal at their

peril. (Jackson *a*. Parkhurst, 4 *Wend.*, 369; Rockwell *a*. Hubby, 2 *Sands. Ch. R.*, 9.)

So also it has been held, that where a debtor owing a judgment supposed to be docketed in a particular county, sells his real estate for a specific sum, a part of which is agreed by the parties at the time to be applied to the extinguishment of the judgment, the judgment creditor will be held as against the vendee to have an equitable lien to the amount of the unpaid judgment, although by mistake or neglect it was not docketed in the county. (Haverly *a*. Becker, 4 *Comst.*, 169.) This comes directly within the principle of an equitable lien for the unpaid purchase money; and in the case at bar, if I were able to find the facts that James F. Bush purchased the real estate under an absolute agreement to pay the plaintiff's judgment as a portion of the consideration money which he was to pay, I should hold him liable for the amount of the plaintiff's judgment within the case last cited, and also the premises as equally liable in the hands of all parties who had notice of such agreement. But I have not thought it important to prosecute the inquiry how far other defendants were chargeable with notice of the circumstances of his purchase, because I am not satisfied that he himself undertook or agreed to pay the plaintiff's judgment.

Again, in the case at bar, there is no judgment, and consequently no lien. There is nothing out of which a judgment can be manufactured. There is no equitable mortgage because there was no agreement or intent to give a mortgage—and there is no judgment because the transaction lacks several of the essential features of a judgment—and it has not been shown that it was ever intended to possess them—and without them, it is not entitled to the rank or dignity of a judgment. Hence there is no lien of any kind—and there being none, other creditors were authorized to step in, and claim their rights and perfect their liens.

5. For reasons also before stated I regard the defendants as *bona fide* creditors and purchasers, although some of them may not have paid or advanced any new consideration at the time their titles or liens were perfected. Their debts are *bona fide* and their proceedings regular and fair, and that constitutes them for this purpose *bona fide* incumbrancers or vendees. And in point of intrinsic equity the claims of some of the

defendants will bear a favorable comparison with those of the plaintiff.

The plaintiff advanced at the time nearly three thousand dollars in cash—and surrendered old and valid securities for previous loans to a large amount, and these constitute doubtless strong equities. But the plaintiff's debt was a joint or partnership debt, and only had an equitable preference upon joint or partnership property. Rachael Hasbrouck, Sophronia Stewart, the executors of Levi Stewart, and the Middletown Bank in part, had individual debts secured on individual property. Severyn Hasbrouck seems to have parted with, and to have intended to discharge his claim against the partnership for the mortgage he got upon the individual property—and this perhaps may be regarded as a new consideration. (Padgett a. Lawrence, 10 *Paige*, 180.)

The Goshen Bank had two mortgages to secure a note, which note was doubtless taken in part to secure an old indebtedness, but for the balance, if it had any consideration at all (and as to this the evidence is not very clear or satisfactory), it must have been upon some new consideration advanced or agreed to be advanced at the time. Fobes purchased with knowledge of the plaintiff's judgment, but seems to have given his notes for the entire consideration money at the time, some of which he afterwards paid, and the residue of which he secured by mortgage upon a portion of the premises. James F. Bush, conveyed by warranty deed, in satisfaction of some notes given by him and held by Edwin Fobes and Ebenezer Bush, parcels No. 1 and 11, and as he is apparently insolvent they are interested in maintaining their title to that property.

On the whole, perhaps, the naked equities of the plaintiff, disconnected from the legal aspect of the case, may be regarded as superior to those of some of the defendants, and inferior to those of others. There is therefore no such extraordinary preponderance in his favor in that respect, as should induce the court to override the other considerations which would seem to preclude him from asking the enforcement of his claim as an equitable lien. This ground of relief must therefore also be denied.

There is another aspect of this case which deserves some consideration—although but slightly alluded to on the argu-

ment. Before obtaining the judgment in question, the Bank had three valid judgments against the Messrs. Bush, upon which there remained due about $3300. These judgments were cancelled according to the stipulation of the parties at the time the new judgment was obtained. The implied, if not the express understanding was that the new judgment should be a good and available security. It turned out not to be so—and I think as against the judgment debtors this would entitle the judgment creditors to have the cancellation of those judgments vacated or removed from the record. (Mechanics' Bank *a.* Minthorn, 19 *Johns.*, 244; Bank of Newburgh *a.* Seymour, 14 *Ib.*, 219.)

And I do not see if the subsequent judgment creditors or purchasers knew of the original judgments, and impliedly or expressly of their fairness, and knew that they entered into the composition of the judgment in question, and that they had not been paid or satisfied otherwise than by the entry of what now turns out to be an invalid judgment, why the old judgments ought not to be reinstated as of their original date, just as any other judgment or lien would be, which had been satisfied or cancelled of record without payment or by mistake. But to accomplish this result, I think the subsequent creditors should have knowledge of all the foregoing particulars : and I am not satisfied that any such extent of knowledge is brought home to them by the evidence. The utmost I can discover they were apprised of, is the fact of the existence of the plaintiff's judgment, and legal advice of its invalidity. I am not satisfied that they were apprised of the component parts of that judgment, and especially of the fact that there was no other reason or consideration for the cancelling of the old judgments, than the embracing of their amount in the new and imperfect judgment. I have had some hesitation upon this part of the case, but on the whole have concluded that even this limited relief ought not to be granted to the plaintiff. The complaint was not, I think, framed with this object—the litigation has not been conducted upon that basis—and perhaps the more appropriate mode of obtaining that relief, would be by a motion having that object directly in view. Nevertheless I think if the facts justified it, such relief would be attainable under the present complaint (Dunham *a.* Waterman, 17 *N. Y.* (3 *Smith's R.*, 9); S. C., 6 *Abbotts' Pr. R.*, 366; Kendall *a.* Hodkins, 7 *Ib.*, 312), and

therefore I shall not do what I otherwise would have been disposed to do—that is, to dismiss the plaintiff's complaint without prejudice to a motion to the court to obtain the relief above suggested.

The plaintiff has therefore failed on the merits as to the entire litigation, and has shown no sufficient reason for bringing these parties into court. He ought, therefore, I think to pay costs as to all the parties who resist the plaintiff's claim.

There must be a judgment dismissing the plaintiff's complaint with costs as to all the defendants, except those who being served with process have not appeared or answered in the action, or who assent to the decree which the plaintiff asks.

## COOK *a.* ESLEECK.

*Supreme Court, Second District; General Term, February,* 1859.

### SUMMONS.—SERVICE BY PUBLICATION.

A summons served by publication, named the court and county as "Supreme Court, county of Kings," and described the place at which the complaint would be filed as "the office of the clerk of the county of Kings, at the City Hall, city of Brooklyn, Kings county," without adding, "and State of New York;" and the statement that the complaint had been so filed was not contained in the body of the summons, but subjoined to it in the advertisement, with a separate signature by the attorneys.

*Held*, sufficient.

Appeal from an order granting a motion to compel a purchaser at a judicial sale to complete his purchase.

This action was brought to foreclose a mortgage made by defendant Esleeck, upon real property in the city of Brooklyn, Kings county. The complaint and notice of action pending were filed in the office of the clerk of that county, on the 2d of November, 1857. The defendants Esleeck and five others were afterwards found to be non-residents, and an order was obtained by