ARNOLD *vs.* PATRICK and others.

PATRICK *vs.* ARNOLD and others.

Where a person who had contracted for the purchase of land, obtained a deed of the same, from the vendor, under an agreement that it should not be used until the balance of the purchase money then due was paid; *Held,* that this was a valid delivery of the deed to pass the legal title to the land to the vendee, subject to the vendor's equitable lien for the unpaid purchase money; and that such unpaid purchase money must be paid in preference to a judgment against the vendee, which was a lien upon his estate in the land.

And the vendor having again sold and conveyed the land and taken a bond and mortgage on such second sale, for a much larger amount than was due to him for the unpaid purchase money on the first sale, which mortgage and conveyance were recorded before the recording of the deed to the original purchaser, and the bond and mortgage were afterwards assigned to a person who was informed of the facts upon which the equitable rights of the parties depended; it was also *held,* that the assignee of the mortgage was only entitled to preference in payment out of the proceeds of the land over the judgment creditor of the original vendee, to the extent of the unpaid purchase money on the first sale with interest thereon.

A deed of land, or other sealed instrument, cannot be delivered to the grantee or obligee himself as an escrow, to take effect upon the performance of a condition which is not expressed in the deed or instrument; and if so delivered the deed or instrument becomes absolute at law.

March 7.    THE bill in the first of these causes was filed to foreclose a mortgage given by W. Ricketson to Jonathan Ricketson, and assigned by the latter to Arnold, the complainant; in which bill Patrick and others were made defendants, as having some right or interest in the mortgaged premises. Patrick answered the bill, and the same was taken as confessed against the other defendants therein. A cross bill was also filed by Patrick against Arnold, Howland Ricketson and S. Barker, claiming a preference in payment, out of the proceeds of the mortgaged premises, upon a mortgage given to him by H. Ricketson, on the facts stated in the cross bill and in his answer to the original bill. Arnold answered the cross bill, and it was taken as confessed against the other defendants. The solicitors for Arnold and Patrick then entered into a stipulation that the replica-

tions to the answers in both suits should be withdrawn, and the causes heard as upon bill and answer; except that the answer and further answer of Arnold to the cross bill should be considered as a special replication to the answer of Patrick in the first suit.

*S. Stevens*, for E. Arnold. Arnold, the assignee of Jonathan Ricketson, is entitled to all the equities of Jonathan Ricketson as to his whole mortgage. Patrick, the complainant in the cross bill, is not a bona fide purchaser for any new consideration, and therefore has no greater equities as between him and Jonathan Ricketson than George Ricketson. He stands in the place of George Ricketson, having acquired no greater, better or other title than George Ricketson had. Jonathan Ricketson has a superior equity to Patrick, and consequently Arnold has also a superior equity. Arnold is a bona fide purchaser for a new consideration actually paid, to the extent of $506,02. Should the chancellor be against us on these points, then we submit that Arnold's mortgage is entitled to a preference to the extent of $271,43, which was paid on the prior mortgage to Thorp, which was a prior lien to that claimed by Patrick. Arnold should have a decree over against Jonathan Ricketson on his covenants for whatever sum (if any) is decreed to be a prior lien to the mortgage assigned by Jonathan Ricketson to Arnold.

*J. Buel, jr.* for Jesse Patrick. The title to the undivided half of the premises described in the pleadings, and in the mortgages, passed from Jonathan to George Ricketson by deed of 20th August, 1829. There was a good delivery of this deed. (*Shep. Touch.* 58, 59.) Patrick's judgment against George Ricketson was a valid lien on the premises conveyed to George Ricketson. And his mortgage executed by Howland Ricketson is also a valid lien on the premises, and entitled to priority. The deed from Jonathan to William Ricketson and the mortgage from William to Jonathan, are void as against Jesse Patrick, as at the time they were executed there was an adverse possession in George

Ricketson. Arnold, the assignee of the mortgage, is in no better situation than the mortgagee would have been. (1 *Paige's Rep.* 131. 3 *Cowen*, 353. 4 *id.* 722.)

THE CHANCELLOR. The intention and effect of the stipulation between the solicitors of the only two parties who have appeared in these causes, as I understand it, is, that the several matters stated or averred in the answer of Patrick to the original bill are to be taken as true, except so far as they are denied, put in issue or modified by the answer of Arnold to the cross bill; and that all the allegations and averments in the answer and further answer in the cross suit are to be taken as true. The facts of the case, therefore, so far as they are material to the determination of the rights of the several parties, are substantially these: In the spring of 1825, Jonathan Ricketson, who was the owner of lot No. 15, in Thorp's patent in the county of Clinton, contracted to sell one undivided half thereof to Peter Keys, and the other half to George Ricketson, for $350 each. Keys' half was paid for, and duly conveyed by J. Ricketson and wife to J. P. Hallock under some arrangement made between him and Keys, and the deed was regularly recorded. G. Ricketson went into and remained in possession of his half, and made improvements thereon, but did not pay the purchase money. In July, 1829, a judgment was entered up against him in favor of Patrick, on bond and warrant, for a debt previously due, amounting to about $1700. About a month after this judgment was entered, George Ricketson applied to Jonathan, who was at work in the field, to sign a deed for the premises, and brought with him a pen and ink and a deed filled up and his clerk to witness it; but Jonathan declined signing it until the purchase money was paid, with some other small claims, amounting in all to about $500. George said there were some men from the south waiting at his store who were ready and willing to let him have the money, and to sustain him in his business, as soon as they could see that he was to have a deed of the premises; that the money would be obtained upon showing them the deed, and that the deed

should not be used or put in force until the money was paid to Jonathan. The latter, therefore, signed the deed and delivered the same to George, or his clerk, telling him it was not to be acknowledged or recorded until the purchase money was paid; and requesting the clerk to take notice that it was only delivered conditionally. George did not procure the money or return the deed, but went off the next day to the south, leaving his business in the hands of his agents and workmen. He having been gone some time, and it being apprehended that he did not mean to return, William Ricketson, a brother of Jonathan, and without any authority, for aught that appears, took possession of the premises, and continued the business in which George had been previously engaged. In October, 1829, Jonathan sold and conveyed the premises to William, and took back a mortgage for $900 for the purchase money, both of which were duly recorded. But by mistake in drawing this deed and mortgage the whole lot was included, instead of the undivided half thereof. In January, 1830, J. Ricketson sold and assigned the mortgage to Arnold, for the whole amount; $506,02 of which was paid in cash, and the residue credited on a pre-existing debt—J. Ricketson covenanting that the whole amount was justly due and was a valid lien upon the premises. In April, 1830, the deed of August, 1829, to George Ricketson was proved by the subscribing witness and recorded; and in July, 1830, Patrick caused the premises to be sold upon an execution on his judgment, and became himself the purchaser thereof, at a sum much less than the amount due him. Shortly after this sale, George made an arrangement with Howland Ricketson to purchase Patrick's right to the premises under the sheriff's sale. Howland then went into possession, and in November of the same year he purchased the premises for $800, and took an assignment of the bid, and gave back a mortgage to Patrick for the purchase money, payable in six annual payments, with interest. In July, 1831, Howland Ricketson, with the assent of George, sold the premises to S. Barker for $1500, with warranty, and took back from him a mortgage for $1109,67, the balance of the purchase money not paid down; which

deed and mortgage were duly recorded. It was verbally agreed between H. Ricketson and S. Barker that he might pay $800 of this mortgage directly to Patrick in satisfaction of his mortgage; and the times of payment were so regulated as to have that amount payable at the times when the payment on the mortgage to Patrick would become due. After the time for redemption had elapsed, Patrick received a conveyance from the sheriff, and then executed a deed of confirmation, subject to his mortgage, for the purpose of carrying into full effect his sale to H. Ricketson. In November, 1831, H. Ricketson, through Barker, paid Patrick $189,34, for the first instalment on his mortgage; and in November, 1832, Barker paid him the further sum of $180 thereon. The residue of Patrick's mortgage is still unpaid, for which he claims a preference over Arnold's mortgage.

As both bills have been taken as confessed against all the parties except Arnold and Patrick, the only questions to be decided here are as to the priorities between the liens which Arnold and Patrick claim; and the right of Arnold to a decree over against J. Ricketson upon his covenant of warranty, if his mortgage is not a lien upon the premises for the whole $900. From the facts stated in the answer of Arnold, in connection with those stated in the further answer as having been derived from the information of J. Ricketson subsequent to the assignment of the mortgage, which under the stipulation in this case must be taken to be correct, I am inclined to think that there was such a delivery of the deed of August 1829 as was sufficient at law to pass the legal title to the premises in question; subject however, in equity, to the payment of the unpaid purchase money. It is evident from the facts stated, that it must have been the intention of both parties that if the purchase money was paid the deed should take effect without any new delivery; as the grantee had, under the agreement of 1825, an unquestionable right to a conveyance of the premises upon payment of the amount due. Had this deed been entrusted to the clerk merely, as an escrow, to be delivered to George upon con-

1837.

Arnold
v.
Patrick.

dition that the purchase money was actually paid to the grantor within a certain prescribed time but not otherwise, the legal title would still have remained in the grantor, although the deed might have gotten into the hands of the grantee, without a performance of the condition upon which it was to take effect. That does not appear to have been the case here; but the parties acted upon the erroneous supposition that the deed might be delivered to the grantee himself, upon the condition that it should not be proved and recorded if the purchase money was not paid, and that the legal title would not pass by such a delivery. The legal rule however is, as was insisted upon by the counsel for Patrick, that a deed or any other sealed instrument cannot be delivered to the grantee or obligee himself as an escrow, to take effect upon a condition not appearing upon the face of such deed or instrument ;(a) but that if so delivered, it becomes absolute at law. (*Coke Litt.* 36, *a*. *Touchstone*, 59. *Thoroughgood's case*, 9 *Coke's Rep*. 137, *a*.)

But in the view I have taken of this case it is not very material whether the legal title did or did not pass by the deed of August 1829, as the equitable rights of these parties are substantially the same in either case. If the legal title passed to George Ricketson by that conveyance, he took it subject to the equitable lien of the grantor for the unpaid purchase money, even if there had been no agreement to that effect as between the parties. (4 *Kent's Com.* 2 ed. 151, &c.) Although a judgment is at law a general lien upon the legal estate of the debtor, it will in equity be so controlled as to protect the equitable rights of third persons against such legal lien, and also against purchasers under the judgment who are not entitled to protection, as bona fide purchasers without notice of the previous equitable claim. This was so held by Mr. Justice Thompson in the circuit court of the United States for the southern district of New-York, in the several cases of *Lane and others* v. *Ludlow, adm'r*, &c. in 1831, his manuscript opinion in which cases I

(a) See *Flagg* v. *Mann*, 2 *Sumner's Reports*, 487.

1837.

Arnold
v.
Patrick.

have seen ;(a) and it is now the settled law of this court. (*See How's case*, 1 *Paige's Rep.* 125 ; *White* v. *Carpenter*, 2 *idem*, 217 ; *Veirsted* v. *Avery*, 4 *Idem*, 9.) Even if Patrick had no notice of the circumstances attending the delivery of the deed, and that the purchase money was not paid, which is not alleged in his answer or pretended in this case, he is not entitled to claim protection as a bona fide purchaser ; as he bid in the property under his own judgment for an antecedent debt, paying no new consideration therefor. He therefore took the legal title under the sheriff's sale subject to the equitable lien for the unpaid purchase money due to J. Richardson; which equitable right was vested in Arnold under the assignment of the mortgage. As William Richardson was in the actual possession of the premises at the time of the conveyance to him, and took the deed with the assent of George, the deed and mortgage were effectual to transfer the equitable interest to Arnold, as

(*a*.) LANE *vs.* LUDLOW, Administrator, &c.

DORR *vs.* THE SAME.

THOMPSON, Judge. The material facts in each of these cases, so far as the questions now before the court are involved, are essentially the same. The bills are filed to obtain injunctions to restrain the plaintiff from proceeding at law on executions to obtain satisfaction of a judgment recovered by the defendant's intestate against William Bayard, out of certain lands in the possession of the complainants, and which they had purchased of William Bayard before the judgments were obtained, though the deeds were not executed until afterwards.

It is admitted that such contracts were made between Bayard or his agent and the purchasers, which, together with the part performance on the part of the purchasers by taking possession and making valuable improvements before the judgment against Bayard was docketed, as to constitute valid . contracts for the land within the statute of frauds, and entitle the complainants to demand conveyances according to their contracts. Deeds have been executed since the judgment. No part of the consideration money has been paid, but bonds and mortgages given to secure the purchase money, according to the terms of the contracts. The complainants offer to pay the money into court upon being protected against the judgment. William Bayard died insolvent, and his executors are made parties defendants, and submit to the court whether the proceeds of the bonds and mortgages ought not to be paid to them to be distributed among his creditors in due course of administration.

It cannot be denied but that the legal title was in Bayard when the judgment was obtained against him, and that, in a strict legal view of the case,

such possession was not adverse to the claim of Jonathan. George went into possession under his contract merely, which was in subserviency to the legal title of the person from whom he purchased; and as there is no evidence that he ever attempted to set up the deed in opposition to the agreement upon which it was received, the continuance of such possession did not constitute such an adverse holding as to prevent a transfer of whatever interest Jonathan still retained in the land.

On the other hand, Arnold took the assignment of the mortgage subject to all the equities which existed against it in the hands of the assignor. He knew that a deed had been made out and was to have been delivered upon the payment of the purchase money. And although he supposed the deed had not been delivered so as to pass the legal title, it is not alleged in his answer, and probably could not be with truth, that he was ignorant of the fact that George

the judgment became a lien on the land. But the purchasers had a complete prior equitable right to the lands; and the question is whether a court of equity will protect such equitable rights against a strict technical legal right. And I think it will in cases like the present, where justice can be done both to the judgment creditor and the purchaser. The purchase money has not been paid, and there is no suggestion but that the sale was for the full value of the land. The judgment creditor is therefore equally benefitted by taking the purchase money as he would be by executing his judgment against the land. It is not an unusual course in courts of equity to control the effects of judgments obtained subsequent to a contract for the sale of the lands, although the judgment may be a legal lien. (3 *Ves. Jun.* 576. 2 *Wash. C. C. Rep.* 78.) And the reason sometimes assigned why courts of equity will establish an agreement to sell land against a judgment creditor, is that the judgment, although a lien, is not a specific lien on the land : that is, the creditor did not go on the security of the land, but trusted to the general credit of the debtor and his estate. And in equity general creditors are considered bound by a particular equity, and are not so much favored as one who has obtained a specific lien, on the faith of which he advanced his money. (1 *Peer Wm.* 276.) The view which a court of equity takes of such agreements to sell lands is that the seller becomes a trustee for the purchaser. In the case of *Finch* v. *Earl of Winchelsea,* (1 *Peer. Wm.* 278,) it was laid down arguendo, and which is stated to have been admitted and affirmed by the lord chancellor, that if a trustee confess a judgment, though at law it is a lien upon the estate, yet in equity it cannot affect it, because the estate in equity does not belong to the trustee but to the cestui que trust ; that if one articled to purchase an estate, and paid his purchase money, and afterwards the person who agreed to sell acknowledged a judgment to a third person

1837.

Arnold
v.
Patrick.

was entitled to a deed upon payment of the purchase mon-
ey, according to the contract of 1825.   At all events, the
facts within his knowledge at the time he took the assign-
ment were sufficient to put him upon inquiry as to what
were the equitable rights of other parties in relation to the
land.   He therefore, as against this judgment creditor, ac-
quired no greater interest in the land than J. Ricketson
himself might have claimed as against George, under the
contract of 1825.   Under that contract George was in
equity the owner of the land, subject to the vendor's claim
for the purchase money and interest.   To that extent then
and no further is Arnold entitled to priority over Patrick,
who acquired the legal title under the sheriff's sale.   And
if H. Rickertson, together with Barker, had put in an an-
swer to the original bill, they might have insisted upon the
residue of the proceeds of the sale of the mortgaged premi-
ses, if any, after paying the costs and this part of Arnold's

who had no notice, yet this judgment should not in equity affect the estate,
because from the time of the articles and payment of the money, the person
agreeing to sell would become a trustee for the purchaser.   Lord Chancellor
Cowper, in pronouncing his opinion, seems in some measure to qualify the
rule, but not so as to affect its application to the case now before the court.
Articles made, says he, for a valuable consideration, and the money paid,
will in equity bind the estate, and prevail against any judgment creditor,
mesne betwixt the articles and the conveyance.   But this must be when the
consideration paid is somewhat adequate to the thing purchased ; for if the
money paid is but a small sum in respect of the value of the land, this shall
not prevail over a mesne judgment creditor.

The case of *Thompson* v. *Edelin*, (2 *Harris & Johnson*, 64,) decided in the
court of appeals of Maryland, is directly in point.   It arose upon an appli-
cation for an injunction to enjoin proceedings on a judgment and execution
at law ; and the doctrine laid down by the court is, that a contract for land
bona fide made for a valuable consideration, vests the equitable interest in
the vendee from the time of the execution of the contract, although the money
is not paid at that time.   When the money is paid according to the terms of
the contract, the vendee is entitled to a conveyance.   And a judgment ob-
tained by a third person against the vendor, mesne the taking of the contract
and the payment of the money, cannot impair or defeat the equitable interest
then acquired, nor is it a lien upon the land to affect the right of such cestui
que trusts.   I have not before me the Maryland statute with respect to the
lien of a judgment at law, but presume it is substantially the same as the
statute of this state.   Here the judgment is not considered as transferring
any title to the judgment creditor, but only as creating a general lien or se-
curity on the land of the debtor.   (*Matter of Howe*, 1 *Paige's Rep.* 128.) And

claim, and the balance due on Patrick's mortgage. But as they suffered that bill to be taken as confessed, which was an admission that they had no equity as against the whole of Arnold's mortgage, their rights, as to the surplus, if they had any, are gone, except as to what may remain after satisfying both mortgages and the costs.

The decree must therefore direct, in the first place, after paying the master's costs and disbursements on the sale, that the costs of both parties in this suit be paid rateably out of the proceeds of the mortgaged premises. Then the amount due to J. Ricketson at the date of his deed of the 20th of August, 1829, (that is $350 and the interest from the spring of 1825, say the middle of April, as the precise time of the contract does not appear in the pleadings,) must be ascertained ; and that sum, with interest thereon from the date of that deed, must be paid to Arnold in part satisfaction of his mortgage. The amount due on Patrick's mortgage

in the Maryland case above referred to, it is said the judgment is a lien on the land of the debtor, and attaches on it as a fund for its payment, but the legal estate in the land is not vested in the judgment creditor.

I am accordingly of opinion, that the complainants respectively, on paying into court the purchase money and interest, are entitled to protection against the judgment, and that the injunction in each case must be made perpetual.

And I can see no ground, upon which the executors of William Bayard are entitled to this money, in preference to the judgment creditors, against whom the bills have been filed. The executors submit to the court whether this money ought not to be paid to them, to be distributed among the creditors of William Bayard, in due course of administration. But no facts are placed before the court shewing the nature or character of the debts or any thing from which the court can judge of and determine the rights of such creditors. There does not appear at all events to be any other judgment creditors. The money must accordingly be paid over to the administrator named in these proceedings.

The case of *James M. Sorley* differs from the others only in this respect, that the purchaser, instead of giving a bond and mortgage to secure the purchase money, actually paid the same to William Bayard, on receiving the deed, and after the judgment obtained against Mr. Bayard ; which brings the case precisely within that of *Thompson* v. *Edelin*, (2 *Har. and John.* 64,) and which rests on the same principles that governed the decisions in the case of *Finch* v. *The Earl of Winchelsea*, (1 *P. Wms.* 278.)

The injunction in the case of Sorley must therefore be made perpetual, without requiring the complainant to make any further payment for the land purchased by and conveyed to him.

with interest, after deducting the payments thereon as sta-ted in the pleadings, must next be paid; and then the resi-due of Arnold's mortgage. There must be a decree over against J. Ricketson, on his covenant of warranty, for the balance of Arnold's mortgage if the same is not fully satis-fied out of the proceeds of the sale. And the surplus of the proceeds of the sale, if any, is to be paid over to S. Barker. The decree is also to be without prejudice to the rights of Patrick, George and Howland Ricketson and S. Barker as between themselves in any future litigation, so far as their legal and equitable rights and claims are not provided for and satisfied by this disposition of the proceeds of the sale of the mortgaged premises.(a)

(a) See *Hatchell* v. *Cremorne*, 2 *Lloyd & Goold's Reports, Tempore Plunk-et*, 236.