Dentó, J.
 

 The determination of this case will depend upon the character of, and the effect to be attributed to, the instrument executed by Alonzo Aylesworth to Isaac and Sarah Howland, at the same time that the latter conveyed to him the premises in controversy. From the two papers, taken together,- it is apparent that it was parcel of the consideration, upon which the conveyance was executed, that Aylesworth, the grantee, should support the grantors during their joint and several lives, The paper signed by him professes, in the first place, to pledge the entire use of the farm for that.purpose; and it is added that, if its produce shall be insufficient for the object, the entire fee shall be appropriated to accomplish it. It was, probably, intended that the transaction should operate, to a certain extent, as a gift; but this was only so far as the value of the property conveyed should exceed the value of the return which was to be made for it. As respected the latter, the arrangement was a contract, which imposed a certain duty upon the grantee, to be performed for the benefit of the grantors, and which, moreover, attempted to create a lien upon the subject of the conveyance, to secure the performance of the duty undertaken by the grantee. The intention of the parties is plain; but the question to be considered is, in what legal or equitable light the arrangement is to be regarded by the court. In our opinion, the instrument signed by Aylesworth is to be considered as creating an equi table incumbrance in the nature of a mortgage.
 

 By the law of England, as administered in the Court of Chancery, an equitable mortgage may be created by any writing from which the intention to create it may be shown; or it may be effected by a simple deposit of title deeds without writing. It will also be allowed in favor of a vendor, for un
 
 *584
 
 paid purchase money, dr of a purchaser who has advanced his money on the faith of a contract for a conveyance. (Millér on Equitable Mortgages, pp. 1, 2, 218, and cases cited.)
 

 The courts of equity in this State have adopted the general doctrines of the English Chancery upon this subject, as upon many others. The cases of a mortgage created by a writing not sufficient to convey the premises, or by a deposit of title deeds, have not been frequent with us; but the doctrine has been applied in a few instances, and I do not find any judgment or
 
 dictum
 
 by which it has ever been questioned. In
 
 Jackson
 
 v.
 
 Dunlap
 
 (1 John. Ca., 114), a vendor of land had executed and acknowledged a conveyance to the vendee, but a part of the purchase money had not been paid, and it was tiren agreed that the grantor should retain the deed until the balance should be actually paid. It was equivocal upon the testimony whether the deed had been delivered so as to pass the title or not. If it had not been, the question we are considering would not arise; but Kent, Ch. J., considered the delivery complete, and that the deed was then retained by the grantor by way of security, till payment. This, he said, was the creation of an equitable lien in the grantee. The other judges seem to have been of opinion that the title did not pass. In
 
 Jackson
 
 v.
 
 Parkhurst
 
 (4 Wend., 369), it was held by the court, Judge Sutherland giving the opinion, that the pledge or deposit of a deed with the grantor, by way of security, would give him a lien in the nature of a mortgage; but the case being at law, it was held that such a title could not be set up against the legal estate. In
 
 The matter of Howe and wife
 
 (1 Paige, 125), the English doctrine, that an agreement for a mortgage is in equity a specific lien on the land, was asserted and applied by Chancellor Walworth.
 

 The cases in which a lien for the purchase money has been established, where the title had passed to the purchaser, are more numerous.
 
 (Garson
 
 v.
 
 Grear,
 
 1 J. C. R., 308;
 
 Warner
 
 v.
 
 Van
 
 Alstyne, 3 Paige, 513;
 
 Arnold
 
 v. Patrick, 6 Paige, 310;
 
 Hallock
 
 v. Smith, 3 Barb. S. C. R., 267.) These cases proceed upon the same principle which the defendant seeks to establish.
 
 *585
 
 The difference in circumstance which exists in the present case is against the plaintiff; for Mr. and Mrs. Howland received back from Aylesworth a written instrument, in which the lien reserved was explicitly stated, while, in the cases referred to, the lien was predicated on the implied intention of the parties without a writing or even a verbal agreement for that purpose. Another example of the same doctrine is furnished, where there is an executory contract for the purchase of lands, the title remaining in the vendor; and subsequently to the contract he suffers liens upon the premises to be created. It is well settled, that the interest of the vendee will be protected against every one but a
 
 bona fide
 
 purchaser or incumbrancer who has advanced money or property without notice of the vendee’s equity.
 
 (Lane
 
 v. Ludlow, 6 Paige, 316, note;
 
 Parks
 
 v. Jackson, 11 Wend., 442.) In such cases, the vendee is considered in equity as the owner, and the vendor as his trustee.
 

 Assuming that it has been shown that Sarah Howland occupied the position of a mortgagee of the land to secure the agreement of Aylesworth to support her during her life, the next inquiry is, whether the plaintiff, by recovering a judgment against him and purchasing the premises on the execution, is in a better situation than he would have been were she, or her representatives, now asserting a claim against him to subject the premises to the payment of a compensation for the provision which he had failed to make. Upon this point, the cases already referred to for another purpose, and many others, are entirely decisive. It will be sufficient to mention the case
 
 In the matter of
 
 Howe, and that of
 
 Arnold
 
 v. Patrick, which are full to this purpose. In the' last case, the equitable lien for the balance of the purchase money was established against a judgment creditor who had sold the land on execution, and had himself become the purchaser. The Chancellor said the plaintiff in the judgment was not entitled to claim protection as a
 
 Iona fide
 
 purchaser, even if he had no notice of the facts establishing the equitable lien; “ for,” he added, “ he bid in the property on his own judgment for an antecedent debt, paying no new consideration. , He, therefore, took the legal
 
 *586
 
 title under the sheriff’s sale, subject to the equitable lien for the unpaid purchase money.”
 

 Considering the rights of the parties to be stich as have been mentioned, and the fact being that the defendant is in possession under Sarah Howland, the remaining question is, whether the plaintiff can maintain ejectment on his legal title against a party clothed with her equitable interest. It is well settled, that a mortgagee in possession, the mortgage being forfeited by non-payment, can defend himself in a possessory action brought by the mortgagor, though, if he were out of possession, he could not now maintain ejectment against the latter.
 
 (Phyfe
 
 v.
 
 Riley,
 
 15 Wend., 248.) But this, I think, is not so, except in 'the case of a technical mortgage, conveying, subject to the condition, a legal title to the premises.
 
 (Marks
 
 v.
 
 Pell, Jackson
 
 v.
 
 Parkhurst, supra.)
 
 If the present were, therefore, an action of ejectment, prosecuted under the former practice, in which nothing but legal principles could be taken into-consideration, then, as the deed from Aylesworth to Mrs. Howland has been found to be fraudulent, I think the defendant could not resist the plaintiff’s title. But, since the blending of legal and equitable remedies, a different rule must be applied. The defendant can defeat the action upon equitable principles; and if, upon-the application of these principles, the plaintiff ought not to be put into possession of the premises, he cannot recover in the action. It has been shown that the premises were, in effect, mortgaged to Howland and his wife to secure the performance of Aylesworth’s agreement to support them and the survivor of them during life, and that the plaintiff has taken the place of Aylesworth. When he obtained title by the execution of the sheriff’s deed, Aylesworth had been in default in the performance of his agreement for nearly three years. Mrs. Howland and her grantees, it is true, had been in possession, and had enjoyed the use of the premises, but no account has been taken to 'show how far the income derived from that source would go in fulfillment of the agreement. This action is not brought for a redemption, and is not adapted to that kind of relief. It would be manifestly inequitable to let the
 
 *587
 
 defendant into possession until he shall procure an account to be taken, and shall pay or tender the amount which shall be found in arrear upon the above mentioned agreement, executed by Aylesworth, for the support of Mrs. Howland up to the time of her death.
 

 The judgment of the Supreme Court must be reversed; and, as we cannot certainly say what case the plaintiff may make, now that the legal principles which govern the action have been determined, there must be a new trial, with costs to abide the event. If the main features of the case cannot be changed, the only remedy for the plaintiff is to institute a suit for redemption, upon the principles which have been mentioned.
 

 ' All the judges concurring,
 

 Judgment reversed, and new trial ordered.