JAPTHA A. HUDDLESON ET AL. V. ORPHEUS B. POLK.*

FILED DECEMBER 2, 1903.    No. 13,113.

1. Assignment: BOND. The sureties on the official bond of a sheriff are liable for his misconduct when acting as assignee under the provisions of section 7, chapter 6, Compiled Statutes.

2. ———: RECORDING DEED. The provisions of section 6, chapter 6, Compiled Statutes, 1899, requiring the filing of a deed of assignment for record in the clerk's office of the county in which the assignee resides, within 24 hours after its execution, is mandatory. *Miller v. Waite,* 60 Neb. 431, followed.

3. ———: ———. The fact that the assignor requests a sheriff, acting as assignee, to withhold a deed from record the statutory time, is no excuse for such neglect.

* Rehearing allowed. See opinions, pp, 489, 492, *post.*

4. **Assigned Claims: ACTION.** An attorney to whom claims are unconditionally assigned may prosecute an action in his own name for a recovery on such claims, without joining the original claimants.

5. **Assignment: DISTRIBUTION.** The claims of creditors who stand in a hostile attitude to an assignment can not be prorated with the claims of those who have complied with the act, in a distribution of the proceeds of the assigned property.

6. **Recording Deeds: EVIDENCE.** Evidence examined, and *held* not sufficient to show a compliance with the statute in the matter of recording an assignment deed.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Willard E. Stewart,* for plaintiffs in error.

*Robert S. Mockett, Orpheus B. Polk, John M. Stewart* and *Thomas C. Murphy, contra.*

OLDHAM, C.

This was an action instituted by Orpheus B. Polk, as assignee of numerous creditors of the firm of Muir-Cowan Company, a partnership, doing business in Lincoln, Nebraska, against the sheriff of Lancaster county and the sureties on his official bond, for the failure of the sheriff to file a deed of assignment, executed and delivered to him as sheriff of said county by the firm of Muir-Cowan Company, within the time required by law; the petition alleges that, by reason of such failure and neglect, property and effects of the insolvent firm, which had been delivered to such sheriff as assignee, were taken from his possession by attachment proceedings instituted by other creditors, and that the amount and value of the goods so taken were equal to, or in excess of, the claims assigned to plaintiff. The sureties on the sheriff's bond answered, alleging numerous defenses which will be considered in the opinion. Plaintiff replied with a general denial of the facts alleged in the answer; there was a trial to a jury; the court directed a verdict for plaintiff in the sum of

$2,839, which was accordingly returned, and judgment was rendered upon the verdict, and the defendant sureties bring error to this court.

The first contention is that the sheriff, when acting as assignee under the provisions of chapter 6, Compiled Statutes, acted under color of, but not by virtue of, his office, and hence the sureties on his official bond are not liable for such misconduct. This contention, however, flies in the face of the plain language of section 7, chapter 6, Compiled Statutes (Annotated Statutes, 3506), which says:

"Immediately upon the execution and delivery of any such assignment, the sheriff shall take possession of all the assigned estate, and preserve, insure, and safely keep the same for administration according to law, and the sheriff and his sureties shall be liable, upon his official bond, for the faithful execution of the trust created by such assignment, for the preservation of such assigned estate, and for the accounting for and paying over of all moneys derived therefrom."

The next question urged is that the deed of assignment is absolutely void, because made for the purpose of hindering and delaying creditors, and therefore conveyed no rights to the assignee, even had he recorded it as provided by law. The same objection to this deed was urged before this court in *Miller v. Waite*, 59 Neb. 319, and it was there held that the deed was not void upon its face, and that its execution and delivery conveyed the effects of the insolvent estate to the sheriff as assignee. On a rehearing of this case in *Miller v. Waite*, 60 Neb. 431, it was held that the provisions of the statute requiring the deed to be recorded within 24 hours were mandatory, and a failure to file such instrument within the time limited by statute avoids the assignment and renders it of no force and effect. It follows from these conclusions that, had the sheriff recorded the deed within the time prescribed by statute, he would have conserved the property and impounded it for the benefit of creditors who filed their claims for allowance as provided for by chapter 6,

*supra;* consequently, his failure to file the deed amounted to a neglect of official duty, for which he and his bond are liable to the extent to which creditors, who complied with the provisions of the assignment act, have been injured. It clearly appears from the record that each of the creditors, for whom plaintiff acted as assignee, had filed their claims with the county court, and that such claims had been duly allowed, and the proof in the record shows that there were sufficient assets of the bankrupt estate to have paid these claims, had the deed been recorded and possession of the property retained by the sheriff as assignee. It is urged, however, in extenuation of the action of the sheriff, that he failed to record the deeds for 10 days by request of the assignors and their attorney, and because no registry fee was paid him by the assignors, at the time the deed was delivered to him. We think there is little merit in this explanation. When the sheriff accepted the deed and took possession of the property as assignee, it was his duty to comply with the statute by having the deed recorded, and the provisions of the statute were ample to reimburse him for any recording fees expended from the assets of the bankrupt estate. When he accepted this trust he should have executed it faithfully for the benefit of creditors as well as for the benefit of the assignors.

It is also urged by defendants that the plaintiff in this cause of action is not the real party in interest, and that therefore the action should abate. The evidence, about which there is no dispute, shows that all the claims represented by plaintiff were unconditionally assigned to him by the various creditors which he represented; that the consideration of the assignment was the prosecution of the claims for one-half the amount which should be recovered as well as a release of attorney's fees already earned by him in the prosecution of other suits for these creditors growing out of the same failure. This assignment having been an unconditional conveyance of all title to, and right of action upon, each of the claims, was sufficient to authorize the maintenance of this suit in

plaintiff's name alone, without joining any of his bene-
ficiaries.   *Meeker v. Waldron,* 62 Neb. 689; *Allen v.
Brown,* 44 N. Y. 228.

It is suggested that even if plaintiff were permitted to
recover he should only have been allowed to recover a
*pro rata* share of the entire indebtedness of the defunct
firm; that the claims of adverse creditors, who proceeded
by attachments and executions against and consumed the
assets of the bankrupt estate, should be taken into con-
sideration in fixing the amount of plaintiff's recovery.
It will be remembered that the amount of the claims filed
with the county court in compliance with chapter 6,
*supra,* was shown by the testimony to have been less than
the value of the property for which a recovery was sought.
Now, had the sheriff done his duty in recording the deed
within the time fixed by statute these were all the credi-
tors who would have been entitled to participate in the
proceeds of the assigned property, and, consequently, they
were the only ones injured by his negligent act.   This
principle is well set forth in Burrill on Assignments (6th
ed.), sec. 441:

"Those whose claims assume a hostile attitude to the
assignment can not claim any interest under it or insist
on standing as parties to it.   Thus, where a creditor had
attached assigned property claiming that the assignment
was invalid, he was not allowed to enforce payment of his
distributive share."

It is finally contended by counsel for defendants that
there was evidence in the record tending to show a record-
ing of the instrument with the county clerk of Lancaster
county which should have been submitted to the jury, and
that in the face of this testimony it was error to direct a
verdict for plaintiff.   We have examined the record care-
fully to see if there is merit in this contention.   In the
first place, each of the answers of defendants admitted
that the deed was not filed for 10 days, and alleged, as an
excuse, a request of the assignors to the sheriff, and the
failure of the assignors to advance the fees necessary for

the recording of the deed. This defense we have already considered. In the next place, the sheriff himself testified and said that he did not record the deed for 10 days because the assignors requested him not to do so, and because no fees were advanced for paying the expense of the recording. The deputy sheriff who had the matter in hand for his principal, and was in charge of the assigned estate, testified, in the first instance, that on the morning after the receipt of the deed he went to the register of deed's office to record the same; that the register demanded a fee of $1.25; that he communicated with counsel for the assignors and was told that they would not advance the fees at that time as they did not want the deed recorded yet. Upon being recalled the deputy sheriff testified that, after leaving the office of the register of deeds, he took the deed of assignment to the county clerk's office; that some of the employees of the office were there when he entered; that he laid the deed down with 25 or 50 cents and told them to record it, and then communicated this to the attorney of the assignors who told him that they did not want the deed recorded then; that he took the deed away, and it was not offered for record for 10 days, when it was finally recorded with the register of deeds. We do not think there was anything in this testimony to submit to the jury on the question of a compliance with the statute in the matter of recording the instrument. While it is plain that the deputy sheriff went to the office of the county clerk with the intention of recording the instrument, it is equally plain that, by the advice of the attorney of the assignors, he abandoned this commendable purpose, and withdrew the deed before it was recorded in either the office of the register of deeds or of the county clerk. The deed conveyed both real and personal estate, and should have been recorded in both offices, and was recorded in neither until 10 days after its delivery to the sheriff.

We therefore conclude that the judgment of the district

court is right and should be affirmed, which we accordingly recommend.

HASTINGS and AMES, CC., concur.

By the Court: For the reasons given in the above opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed September 22, 1904. *Former judgment of affirmance adhered to:*

Assignment: FAILURE TO RECORD DEED: DAMAGES. Where, in an action on the official bond of a sheriff to recover damages for his neglect to file a deed of assignment under the provisions of section 7, chapter 6, Compiled Statutes, 1899, the defendants' object to the introduction of the only evidence offered which would tend to mitigate the damages and reduce the amount of the plaintiff's recovery, thus causing its exclusion, they are not in a position to complain of the judgment as excessive.

BARNES, J.

This case was first submitted to the commission, and was decided in the defendant's favor. See opinion, *ante,* p. 483. On the plaintiffs' application a rehearing was allowed and the case was, thereupon, submitted to the court. The statement of facts contained in the opinion of the learned commissioner is quite full and complete, and as its correctness was not challenged on the rehearing, no other or further statement of the case is necessary.

It is strenuously urged that the deed of assignment in question herein was never delivered to sheriff Miller; that, for that reason, he was not required to file it for record, and thus protect the interests of the defendant, a creditor of the assignor, in the assigned estate. An examination of the authorities cited in support of this contention discloses that they treat of deeds or conveyances delivered in escrow, and therefore are not in point. It is not claimed, in this case, that the deed was not actually placed in the hands of the sheriff, but it is said that a

request was made of him not to record it immediately, for the reason that the assignor might be able to effect a settlement with his creditors. In *Wallace v. Berdell,* 97 N. Y. 13, it was held:

"Where a trust deed is actually delivered to the grantee the rights of the *cestuis que trustent* attach, and the effect of the delivery can not be impaired by any mental reservation on the part of the grantor, or oral condition, repugnant to the terms of the deed, attached to the delivery. It is not competent, therefore, to show, for the purpose of defeating those rights, that the delivery was with intent that the deed should not take effect unless again delivered, or unless the grantor afterwards determined that it should take effect, or upon any other contingency contrary to the terms of the instrument." Citing *Worrall v. Munn,* 5 N. Y. 229; *Lawton v. Sager,* 11 Barb. (N. Y.) 349; *Arnold v. Patrick,* 6 Paige Ch. 310.

It seems clear, therefore, that so much of the opinion of the learned commissioner as holds that there was a delivery of the deed, and that it was the duty of the sheriff to have it properly recorded, is right, and should be adhered to.

It is contended, however, that the assignor did not advance the recording fee; that the assignee was not required to pay the same or advance the money therefor, and that he was, therefore, legally excused from having the instrument recorded.

This question was discussed and fully disposed of in the opinion of the learned commissioner. It may be further said, however, that section 28 of the assignment act fixes the fee for recording the deed, and provides that it shall be paid out of the assigned estate. Therefore, the contention of the plaintiffs on this point must fail.

It is also claimed that the judgment of the trial court is excessive; that as a matter of fact the value of the assigned estate was much less than the claims against it, and therefore the defendant in error was only entitled to recover an amount equal to his *pro rata* share of the

value thereof. It appears from the record, however, that the plaintiffs are not in a position to avail themselves of this claim. The plaintiff below, defendant herein, on the trial in the district court, offered in evidence the records of the county court, for the purpose of showing the number and names of the creditors of the insolvent, together with the amount of their claims against the bankrupt. The plaintiffs herein objected to its introduction, and it was excluded. A party can not be heard to complain, in the appellate court, of an error which he has been instrumental in bringing about. *Farmers Mutual Ins. Co. v. Cole,* 4 Neb. (Unof.) 130. In *Knudson v. Parker, ante,* p. 21, it is said:

"A party who objects to evidence and causes it to be excluded can not obtain a reversal of the judgment as unsupported for want of the evidence so excluded."

It seems to be well settled that an appellant can not complain of the exclusion of evidence which his own objections have assisted in keeping out of the record. Neither can a party obtain the admission or exclusion of testimony on a trial and then assert, on appeal, that the ruling of the court in his favor was erroneous. It follows that if this evidence was erroneously excluded upon the objection of the plaintiffs in error, they must abide by the consequences, and can not, for that reason, ask that the judgment be reversed because there is no evidence to support it. If there were any other creditors entitled to share in the recovery on the sheriff's bond, that was a matter of defense to be pleaded and proved by the defendant. As soon as the sheriff failed to record the deed of assignment, a cause of action arose under the statute for damages for the value of the property lost. If there were others besides the plaintiff who were entitled to share in the recovery, it was a matter in mitigation of his damages, and hence a defense; and, as it was not pleaded or proved, can not now avail.

As stated in our former opinion, it appears that the amount of the claims filed, approved and allowed in the

county court, including the claims held by the defendant in error, were much less than the value of the assigned estate. Therefore, the judgment for the full amount. of ·defendant's claim must be sustained.

For the foregoing reasons we are constrained to adhere to our former judgment, and it is so ordered.

AFFIRMED.

The following opinion on second rehearing was filed February 9, 1905. *Judgment of affirmance adhered to:*

1. **Failure to Record Deed:** LIABILTY OF SHERIFF. Where a deed of assignment of an insolvent person, executed in pursuance of the assignment laws in favor of the sheriff as assignee, is rendered void because of the latter's failure to have the same filed and recorded within the time required by law, and, because thereof, all of the property of the insolvent is lost to the general creditors, and there is no estate to administer under the provisions of the insolvent act, it is not a prerequisite to the maintenance of an action and the recovery of damages by a creditor, who has suffered loss by the neglect of the sheriff, to have his claim against the insolvent filed with, and approved by, the county court as though the estate was being administered in that tribunal.

(*a.*) Measure of Damages. Under such circumstances, the true measure of damage is the *pro rata* share of the creditor with all other creditors who would be entitled to participate in the assets of the insolvent estate had the assignment not been invalidated.

2. ———. Under the pleadings and the proof in the case at bar, it appearing that the amount of the debts owing by the insolvent to the plaintiff at the time the cause of action accrued was 68.9 per cent. of all the debts existing against the insolvent in favor of creditors entitled to participate in the assets of the insolvent estate: *Held*, That his recovery of damages against the sheriff should be limited accordingly.

3. **Damages:** PLEADING. In such an action, it may be shown by the defendant in mitigation of damages that there are other creditors entitled to participate in the assets of the insolvent estate, but, to be available, this fact must be affirmatively pleaded in the answer.

HOLCOMB, C. J.

It is our purpose, at this time, only to examine further into the question of the proper basis of recovery or. true

measure of damage sustained by the plaintiff and which he is entitled to recover, and whether the peremptory instruction of the trial court, under which a verdict was directed, stated the correct rule. While other questions are presented and urged upon our attention by counsel for plaintiff in error, we are of the opinion that they have been correctly disposed of and sufficiently considered in the opinions heretofore handed down. *Ante,* pp. 483, 489. The action is one against the sheriff and the sureties on his official bond for alleged damages because of the former's failure to file, within the time required by law, a deed of assignment of an insolvent company, executed and delivered to him with the possession of the property thereby assigned, in pursuance of the assignment laws of the state. Because of the sheriff's failure in this respect to perform the duties of his office, the insolvent's property was seized by some of the creditors, to the exclusion of others, and the attempted assignment rendered nugatory and wholly void. There is no substantial conflict in the evidence regarding the question now under consideration. The plaintiff as the assignee of certain of the creditors of the insolvent company, in his petition, alleges, among other things, "that the following persons were the only creditors of the said Muir-Cowan Co. (the insolvent) at the time of the execution and delivery of said deed of assignment, as aforesaid, and the only persons entitled to participate in said assigned estate." Then follows the names of thirteen alleged creditors, and the amount due each respectively, aggregating the sum of $3,516.15, which were, it is further averred, "the only claims against said estate." It is also alleged, "that, by reason of the failure of the defendant Fred A. Miller, sheriff, as aforesaid, to file for record said deed of assignment, as required by law, and faithfully to perform the duties of the office of sheriff in that regard, said assignment was avoided as to all said property, and the said creditors were, thereby, deprived of all interest in said property and of all right to have the same applied to the

payment of their said debts, and the said creditors were each damaged to the amount of their said claims." The answer as to the number of creditors, and the amount of the debts owing by the insolvent, consisted of a general denial. There is no controversy regarding the value of the property of the insolvent company that the sheriff lost by reason of the wrongful acts complained of, which, it is agreed, was worth the sum of $1,800. During the trial, the plaintiff filed a disclaimer of any interest or right to recover for certain creditors set forth in the petition, and dismissed his action as to said claims, which were five in number, and aggregated the sum of $908.69. At the conclusion of the trial, by a peremptory instruction, the jury were directed to return a verdict for the plaintiff, and, accordingly, a verdict was returned, fixing the plaintiff's damages at the full value of the insolvent estate as proved, with interest from the time the alleged damages accrued. The question, therefore, is, can the plaintiff, under the allegations of his petition, as an assignee of debts of the insolvent, aggregating a sum in excess of the value of the estate, recover for the loss of the whole of it and for its full value, as his true measure of damage.

1. The plaintiff's petition, in the first instance, was drawn upon the theory that no creditor of the insolvent would have the right to prosecute an action, and recover damages, unless his claim had been first filed in the county court, and allowed as a just debt due from the insolvent company, and to be paid out of the insolvent estate. On the defendant's motion, this allegation was stricken from the petition, and it was, thereupon, recast in the form as heretofore quoted. It is still insisted by plaintiff's counsel that no creditor can maintain an action against the sheriff, or recover damages for his breach of duty, unless his claim against the insolvent company had been duly presented and allowed by the county court, as though the insolvent estate was being administered under the assignment laws of the state, by that tribunal. It is con-

tended there is no competent evidence of any lawful claims existing against the insolvent, save those held by the plaintiff, as assignee, and there being no proof of the filing of any claims in the county court and their allowance, this having been prevented by the defendant's objections, the plaintiff, as the case is made up, is the only one shown to be entitled to maintain an action for the damages occasioned by, and recoverable because of, the sheriff's neglect.  If this contention is sound, then the peremptory instruction, which permitted a recovery, as damages, of the full value of the property included in the void deed of assignment, is correct.  In the case at bar, the assignment was avoided *in toto* because of the act complained of.  The property was all seized by some of the creditors of the insolvent.  The assignment was invalidated at its very inception.  The county court obtained no jurisdiction over the insolvent estate.  There was no property of the insolvent, which passed by the void assignment, for it to administer.  The filing and the allowance of claims against the estate, under the circumstances, was an idle ceremony, and a useless waste and expenditure of time and money.  The law does not require vain and useless things.  The only possible advantage that could be gained, by going through the form of filing and allowing claims against the insolvent, would be to qualify the creditors, thus securing the allowance of their claims, to sue the sheriff on his bond, in an action for damages for failure to perform his official duties, and this, it seems to us, is, under the circumstances, wholly unnecessary.  The statute gives a right of action to the creditors who have been damaged by reason of the failure of the sheriff to discharge the duties thus cast upon him. It is not, therefore, in our judgment, a prerequisite to the enforcement of such liability, and the recovery of the damages sustained, to go to the unnecessary expense of having the county court approve the claim as a lawful demand against the insolvent in a proceeding carried on, in form only, under the assignment law.  This can be

done in a direct action to recover the damages sustained. What the creditors lost, in such a case, would be what they were entitled to receive out of the insolvent estate, had the attempted assignment proved valid and effective. Had the assignment not been invalidated, the insolvent estate would have been administered for the equal benefit of all creditors of the insolvent. A creditor's *pro rata* share in the property of the insolvent, had it been legally impounded, is all that is lost by the wrongful act of the sheriff and this, of course, would be the just and equitable measure of his damage. This case is to be distinguished from those where, under assignment laws, an insolvent estate is being administered by the proper tribunal, and its proceeds distributed among those who prove themselves entitled to participate therein. The pleadings in the case at bar, as finally framed, went upon the theory that all the creditors could maintain an action and participate in a recovery of the damages sustained, according to their *pro rata* share, as evidenced by the amount of their respective demands against the insolvent, and to which they would be entitled from the proceeds of the estate, had the assignment been valid. This does not mean that a creditor could, by his action, seize the property, appropriate it to the satisfaction of his own demand, and then maintain an action for damages against the sheriff. This, of course, could not be done, but this does not, necessarily, affect the rule as to the true measure of damages of those creditors who secured nothing out of the insolvent estate, because of the sheriff's negligence.

2. The plaintiff, in making his case, proved that he was the assignee of creditors having valid claims against the insolvent, in sums aggregating $2,017.96. He also alleged in his petition that there were other claims against the insolvent estate, the holders of which were entitled to maintain an action, and recover damages from the sheriff and his sureties, which aggregated the sum of $908.69. The plaintiff, therefore, according to the allegations of his own pleading, had been damaged to the extent of

68.9 per cent. of the value of the estate lost by the negligent action of the sheriff. It is, however, contended that the plaintiff having dismissed and disclaimed any right to recover as to creditors representing $908.69 of the indebtedness against the insolvent, that amount can not be considered, in determining what is the measure of the damages sustained by the plaintiff. All that was done by the dismissal, was a disclaimer of any right, on his part, to recover for the damages sustained by these several creditors. The dismissal was not equivalent to an amendment, withdrawing from the petition allegations to the effect that they were creditors, the amount due each, and that they were entitled to participate in the recovery of damages, occasioned by the act of the sheriff complained of. The fact that they were creditors still stands as a solemn admission in the pleading of the plaintiff. It thus, so far as the plaintiff is concerned, became an established verity in the trial of the cause, as is unquestionably the fact, that, at the time of the wrongful act complained of, there existed creditors of the insolvent estate, who were entitled to share in the assets, having debts due therefrom, in the aggregate sum of $2,926.65, of which $2,017.96 were owing the plaintiff. It follows, from what has been said, that the plaintiff can recover only his ratable proportion of the total damages accruing to him and the other creditors, and that his recovery should be limited accordingly.

3. The defendants contend that the evidence shows that there are yet other creditors of the insolvent, and that the plaintiff's recovery should be further reduced. Relative to this contention, it is proper to observe that it is quite doubtful whether there is to be found in the record any competent evidence showing other creditors than those of whom mention has been made. It is sufficient, however, to say, as was said in the former opinion, this fact, if it existed, was a matter of defense, which could be urged in mitigation of the damages sustained by the plaintiff. To be available as a defense, however, it is neces-

sary that the same should be pleaded in the answer, in which, as we have seen, touching this issue, it consisted only of a general denial. Maxwell, Code Pleading, 481. The defendants, therefore, are not in a position to complain of the judgment of the court below, in respect of this phase of the case. Our conclusion is that, because of the error in fixing the measure of the damages assessed as the amount of plaintiff's recovery, the judgment of the district court, and the judgment of this court heretofore entered, affirming the same should be reversed, vacated, and set aside, and a new trial awarded, unless the plaintiff shall, within thirty days, file a remittitur of all in excess of 68.9 per cent. of the amount recovered, with interest on such excess from the date of the rendition of the judgment. If such remittitur is filed, the judgment of affirmance will be adhered to.

JUDGMENT ACCORDINGLY.