FANNIE SIEGEL, Appellant, *v.* ALBERT H. ATTERBURY, as Trustee under the Will of MORGAN G. COLT, Deceased, Respondent, Impleaded with MIL-TAN HOLDING COMPANY, INC., and IDA B. MARKS, Defendants.

First Department, June 24, 1938.

*Samuel Witte* of counsel [*George W. Israel* with him on the brief], for the appellant.

*Taylor More,* for the respondent.

TOWNLEY, J. Plaintiff, formerly a third mortgagee of the premises at No. 7 West One Hundred and Thirty-seventh street, Manhattan, took title to the property on the foreclosure of the third mortgage by a referee's deed given after a sale made on July 9, 1937. The relief prayed for against the respondent, the first mortgagee, in possession since December, 1933, under a voluntary assignment of rents by the prior owner, included among other things the following:

" 1. Cancelling and setting aside the said assignment of rents and extension of mortgage dated December 28, 1936, as to the defendants;

"2. Placing the plaintiff in possession of said premises known as 7 West 137th Street, Borough of Manhattan, City and State of New York;

"3. Requiring the defendant, Atterbury, as Trustee, to account for his receipts and disbursements during his management of said premises, and if any surplus should be found in his hands, that the same be equitably applied in reduction of the claims on said premises."

The ordinary law applicable to this situation was summed up by the Court of Appeals in *Becker* v. *McCrea* (193 N. Y. 423, 427, quoting in part from *Trimm* v. *Marsh*, 54 id. 599), as follows:

"'Before taking possession the mortgagee had a mere lien upon the real estate pledged for the security of his debt. After possession he has in his possession the property pledged as his security, the title remaining as it was before. The mortgagor's title is still a legal one, with all the incidents of a legal title subject to the pledge, and the mortgagee's interest is still a mere debt secured by the pledge. If the mortgagee should die in possession, the debt would still go to his personal representatives to be administered as personal estate, and the mortgagor's title would go to his heirs.' In the same case Judge REYNOLDS said: 'In such case the creditor, instead of leaving his debtor in possession and relying upon his intangible legal lien for his security, takes the thing pledged in his own possession and enjoys its use until his debt is paid. He must account for profits and waste to his debtor, and when his debt is paid by the receipt of rents and profits, or in any other manner, his lien is extinguished and his possession is no longer justified by law.'

"Though, as we have seen, the surrender of possession by the mortgagor to the mortgagee confers no title upon the latter, still it is settled law that in such case ejectment cannot be maintained by the mortgagor against the mortgagee, but he must resort to an action in equity to redeem. (*Phyfe* v. *Riley*, 15 Wend. 248; *Chase* v. *Peck*, 21 N. Y. 581.)"

It will be noted that the owner of the legal title at the present time is asking in equity to be put in possession of the premises without making any offer to redeem. The basis for this claim is that at the time the agreement to extend the mortgage was made in 1936, though there was a default in principal which entitled defendant Atterbury to remain in possession, nevertheless, the moratorium statute which prevented Atterbury from foreclosing the mortgage, likewise acted as an ouster of the mortgagee in possession as soon as the defaults in interest and taxes had been made up under the assignment of rents.

We find nothing in the moratorium statute to affect the right of a mortgagee in possession to remain in possession until the mortgage debt is paid and certainly nothing has been done in this case to give the plaintiff who is suing as owner of the legal title any other right than to get possession of the property by redemption. The moratorium statute is designed as a shield for the protection of mortgagors. No equitable purpose would be served by permitting its use as a device for disseising a mortgagee rightfully in possession without the necessity for redeeming the property from the mortgage debt. There is no issue in this case as to the right of an owner to waive the provisions of the Moratorium Act. Nothing has been waived in so far as that act is concerned. That act provides that no foreclosure action may be brought when there is no default on payment of interest or taxes. The defendant Atterbury has brought no foreclosure action; in fact he has agreed not to bring one until 1939.

When the defendant Atterbury accounts for his disposition of the rents and profits, if any of the funds collected from the property that should have been applied to the reduction of the mortgage have been applied to other purposes, it may be that equity will deem that those moneys have been applied *pro tanto* to the reduction of Atterbury's debt. But that is the limit of the relief to which plaintiff is entitled under the rules of law above discussed.

The judgment should be affirmed, with costs.

MARTIN, P. J., and GLENNON, J., concur; UNTERMYER and COHN, JJ., dissent and vote to reverse and grant a new trial.

COHN, J. (dissenting). Plaintiff is the owner of certain improved real estate located at 7 West One Hundred and Thirty-seventh street, New York city, having acquired title thereto upon a sale held pursuant to a judgment of foreclosure of her third mortgage on the property. The deed of conveyance to plaintiff is dated July 21, 1937. The third mortgage held by plaintiff which was foreclosed had been executed and delivered on July 28, 1930.

Defendant Albert H. Atterbury, as trustee under the will of Morgan G. Colt, deceased, is the holder of a first mortgage on the property. This mortgage has been a lien on the realty since July 6, 1910. It contains the following provision: " *in the event of any default or defaults in paying said principal or interest, such rents and proceeds are hereby assigned to the holder of this mortgage as further security for the payment of said indebtedness.*" (Italics ours.)

In October, 1933, interest payments upon the first mortgage and taxes were in arrears and payment of the principal was also

due. For these defaults, defendant Atterbury had begun to foreclose. Under date of October 26, 1933, however, Atterbury entered into an agreement with defendant Mil-Tan Holding Company, Inc., then the owner of the mortgaged premises, by the terms of which the time for payment of principal of the first mortgage was extended for a period of three years; another contract was entered into simultaneously wherein Mil-Tan Holding Company, Inc., gave the first mortgagee an assignment of the rents.

After the expiration of the three-year period and on December 28, 1936, the first mortgagee agreed with Mil-Tan Holding Company, Inc., to extend the first mortgage for a further period terminating December 1, 1939. No payments were to be made on account of the principal of the mortgage during the extended period. As a condition for granting the extension agreement the defendant mortgagee insisted that he be " continued in possession of the property under an assignment of rents as mortgagee in possession." The owner, Mil-Tan Holding Company, Inc., executed and delivered to the defendant Atterbury, as trustee, another assignment of rents on that date. This instrument provided that the assignment was to remain in force as long as the first mortgage remained unpaid, and that defendant Atterbury, as trustee, was to have all of the rights of a mortgagee in possession. It was further provided in the agreement that the assignee of the rents could apply " the surplus rent " toward the payment of amortization of principal of a mortgage on another parcel of real property, " and if enough remains after such payment and after reserving enough for accrued interest and taxes, he shall pay to the second mortgagee, and after her mortgage is paid off, then to the holder of the third mortgage, not exceeding One Thousand ($1000) Dollars a year, at such time and in such manner as may be advisable."

At the time this later assignment of rents was executed there was no default in payment of taxes or in the payment of interest on the first mortgage. There was no default in payment of principal because the payment thereof had been extended. In point of fact defendant Atterbury, as trustee, had in December, 1936, in his possession, under the previous assignment of rents executed October 26, 1933, a balance of $2,068.99.

Thereafter and while the defendant Atterbury, as trustee, was in possession of the mortgaged premises under the 1936 assignment of rents, the third mortgagee, because of defaults in the payment of interest under the third mortgage, commenced an action to foreclose. On the sale held pursuant to the judgment obtained in the foreclosure proceedings, plaintiff purchased the mortgaged premises.

It was conceded that after plaintiff had thus become the owner of the property, she " duly demanded of said defendant Atterbury, as Trustee, that she be permitted to take possession of said premises, and to collect and administer the rents and profits, and to exercise all other rights of ownership in said premises, and to assume the correlative duties, including the servicing of said first mortgage held by defendant Atterbury, as Trustee." It was also conceded that " said defendant has refused said demand, despite the fact that the real estate taxes levied against said premises for the entire year of 1937 were paid and defendant Atterbury had sufficient money on hand to pay the interest on first mortgage which would be due August 1, 1937."

This action was brought by plaintiff (1) to cancel and set aside the assignment of rents and extension of mortgage dated December 28, 1936; (2) to place plaintiff in possession of the real property and to require the defendant Atterbury, as trustee, to account for his receipts and disbursements during his management of said premises; and (3) to require that any surplus found in his hands be applied in reduction of the claims against the property.

According to the complaint, plaintiff claimed that the agreement for the extension of the first mortgage and the assignment of rents, both of which were executed on December 28, 1936, had been collusively entered into between the defendant mortgagee and the former owner of the premises for the purpose of depriving any one who might purchase the premises upon a foreclosure of the third mortgage from exercising the rights to which he would be entitled as such purchaser. Plaintiff failed to prove that the agreements were fraudulently entered into with a view towards defeating the rights of the third mortgagee. However, upon the facts presented to the trial court, it was not necessary to find any collusion in making such an arrangement to entitle plaintiff to relief. (*Bank of Manhattan Trust Co.* v. *571 Park Ave. Corp.*, 263 N. Y. 57, 63.) The judgment in this action would bar any further action which plaintiff might bring against defendant mortgagee to establish her right to possession. It is, therefore, necessary that such rights be determined in this action.

Unless the defendant mortgagee went into possession by virtue of his mortgage, he would not be a mortgagee in possession. " It is well settled that ' the mere fact that the mortgagee receives the rents and profits does not constitute him chargeable as a mortgagee in possession; nor is it sufficient that there is a merely constructive possession, or a possession by virtue of any other right than that of the mortgage.' " (*Ireland* v. *United States Mortgage & T. Co.*, 72 App. Div. 95, at p. 102; affd., 175 N. Y. 491.)

Because of the provision contained in the first mortgage herein-above referred to and the fact that there was no default in payment of principal or interest, and in view of the provisions of the later assignment of rents agreement, the defendant Atterbury did not become a mortgagee in possession in December, 1936. As to whether defendant Atterbury went into possession in October, 1933, as a mortgagee is difficult to determine as the assignment given to him at that time is not a part of the record before us. That there had been a previous default under the mortgage, it is true, is some indication that his status is that of a mortgagee in possession. Whether the default still existed at the time the defendant was given the assignment in 1933 or whether the default had been previously waived is not shown.

A mortgagee in possession is " one who has lawfully acquired actual possession of the premises mortgaged to him, standing upon his rights as mortgagee and not claiming under another title, for the purpose of enforcing his security upon such property or making its income help to pay his debt; but the mere fact that the mortgagee receives the rents and profits does not constitute him a mortgagee in possession, unless he takes the rent in such a way as to take out of the hands of the mortgagor the management and control of the estate." (41 C. J. 612.)

In October, 1933, when defendant mortgagee was given an assignment of rents, he extended the time for payment thereof for a further period of three years. This certainly is inconsistent with any claim that defendant was a mortgagee in possession.

There can be no doubt that a mortgagee in possession is entitled to remain in possession until his debt is fully paid. If defendant Atterbury in October, 1933, went into possession by virtue of his mortgage, rather than by another agreement, why should he insist upon a further assignment of rents in December, 1936, as a condition for extending the payment of the mortgage debt for a further period of three years? His conduct clearly negatives the contention that he is a mortgagee in possession.

The main purpose of a mortgagee taking possession is to take the rents and profits to apply them against his debt. Concededly, the defendant mortgagee did not take possession for the purpose of having the mortgage indebtedness liquidated. In fact, this defendant bound himself not to do this by executing the two agreements extending the time for the payment of the principal indebtedness.

The distribution of the surplus which the defendant Atterbury had in his hands in December, 1936, part of which was paid to the second mortgagee, and the provisions for the payment of the rents

and profits of the property contained in the assignment of rents agreement made in December, 1936, show a status on the part of the defendant Atterbury different from that of a mortgagee in possession. It would seem that defendant Atterbury was merely a mortgagee in possession literally, but not factually or legally.

If this defendant is not a mortgagee in possession, the plaintiff should prevail here. Without the third mortgagee's consent, the mortgagor could not diminish or impair the third mortgagee's rights which were fixed when the mortgage was executed and delivered on July 28, 1930. As security in the event of a default, the third mortgagee had a right to foreclose and to have vested in a foreclosure purchaser the title of the mortgagor subject to the rights of prior lienors.

The owner, it is true, had an absolute right to separate the rents that were to accrue from its reversion in the premises and assign such rents to the defendant, first mortgagee, or to any other person. (*Conley* v. *Fine*, 181 App. Div. 675; *Swan* v. *Inderlied*, 187 N. Y. 372, 374.) In the case at bar, however, defendant mortgagee in the absence of a default under his mortgage would have no greater right to the assignment than would any other person who was not a mortgagee. With relation to the third mortgagee, the defendant Atterbury, as trustee, would not be a mortgagee in possession. His title would be no better and no more secure than that of his grantor.

The grantor's title to the rents and profits was subject to be divested by a foreclosure of the third mortgage. Unless the defendant Atterbury was rightfully in possession under his mortgage, his rights as an assignee of the rents would necessarily be dependent upon the continued existence of the grantor's reversion. Otherwise, when the mortgagor, as here, lost its reversion, the rent, which is merely an incident of the reversion, would be lost by the grantor or to those who took under the grantor with notice of the third mortgage. Thus the plaintiff upon purchasing at the foreclosure sale would be entitled to all of the rights of an owner, including the right of possession, the right to manage the premises, and the right to collect the rents and profits.

As it is not possible upon the record before us to ascertain the respective rights of the plaintiff and the defendant first mortgagee, the findings made at Special Term should be reversed and a new trial ordered.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

UNTERMYER, J., concurs.

Judgment affirmed, with costs.